## INTEGRA BANK/PITTSBURGH,

### v.

### F.B. Chris FREEMAN, Jr. et al.

### No. 93–1765.

United States District Court,
E.D. Pennsylvania.

Nov. 29, 1993.

*ard v. Provident Nat'l Bank,* 994 F.2d 1039, 1044     n. 8 (3rd Cir.1993).

Walter Weir, Jr., Patterson & Weir, Philadelphia, PA, for plaintiff.

Howard A. Rosenthal, Pelino & Lentz, P.C., Patrick J. Doran, Pelino & Lentz, Philadelphia, PA, Robert C. Williamson, Jr., Dove, Chill, Calhoun & Williamson, Jackson, MI, for defendants.

## MEMORANDUM

O'NEILL, District Judge.

### I. Introduction

Currently before the Court are the memoranda of parties regarding the viability of defendants' claim that the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691–1691f, affords them either a defense to liability or an action by way of recoupment in regard to two guaranty/suretyship agreements. The Court holds plaintiff's Motion for Summary Judgement in abeyance while it resolves defendants' claim.

### II. Factual Background

In 1988, RSKC Associates ("RSKC"), a Missouri general partnership formed by two wholly owned corporations—Wooldridge Construction Co. Of Missouri, Inc. ("Wooldridge Construction") and Southwest Tracor, Inc. ("Tracor")—received an $8,000,000.00 loan from plaintiff's predecessor in interest, Liberty Savings Bank ("Liberty"). Robert Wooldridge—sole owner of Wooldridge Construction—negotiated the loan on behalf of

RSKC and his partner F.B. Chris Freeman ("C. Freeman")—the sole owner of Tracor. In 1989, RSKC received an additional $4,000,000.00 from Liberty under a loan modification agreement.

Liberty required each partner corporation and the two corporate principals (Robert Wooldridge and C. Freeman) to submit financial statements. Based in part upon the information contained in those financial statements Liberty approved the loan agreement and, following a second submission of financial statements by the same parties, approved the modification agreement. Pursuant to each of these transactions Liberty required the partner corporations and the two corporate principals to sign an Unconditional Guaranty and Suretyship Agreement ("the Guaranty Agreements"). Liberty also required that the wives of the corporate principals—Clarita Wooldridge and Marsha Freeman ("M. Freeman")—sign the Guaranty Agreements. Liberty neither required nor received financial information from M. Freeman. Further, the Guarantee Agreements did not limit M. Freeman's potential liability to her interest in jointly held assets that appeared on her husband's financial statements.[1] Thus M. Freeman, along with Tracor and C. Freeman, became an unconditional guarantor of the $12,000,000.00 in loans that Liberty made to RSKC.[2]

RSKC defaulted on the loans. In 1993 Integra Bank/Pittsburgh—Liberty's successor in interest through merger—commenced this action to recover $11,951,000.03 in outstanding principal plus accrued interest, late charges and attorney's fees from defendants Tracor, C. Freeman and M. Freeman. In response, defendants assert that Liberty violated the ECOA when it required M. Freeman to sign the Guaranty Agreements and that this violation—if proven—either shields the defendants from liability on the Guaranty Agreements or provides them with a right of recoupment. It is undisputed that the statute of limitations for an affirmative ECOA claim has run.

## III. Discussion

"The purpose of the ECOA is to eradicate credit discrimination waged against women, especially married women whom creditors traditionally refused to consider for individual credit." *Anderson v. United Finance Co.,* 666 F.2d 1274, 1277 (9th Cir.1982). The Act provides that "[i]t shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction ... on the basis of ... sex or marital status." 15 U.S.C. § 1691(a).

Regulations promulgated under the authority of the ECOA provide that "a creditor shall not require the signature of an applicant's spouse or any other person, other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested." 12 C.F.R. 202.7(d)(1). An applicant under the ECOA is "any person who requests or has received an extension of credit from a creditor, and.... [f]or purposes of § 202.7(d), the term includes guarantors, sureties, endorsers and similar parties." 12 C.F.R. 202.2(e). The act defines the term person broadly to include "a natural person, a corporation ... partnership, cooperative or association."[3] 15 U.S.C. § 1691a(f); 12 C.F.R. 202.2(x).

1. The ECOA prohibits creditors from requiring spouses (or other persons) to sign as guarantors for loans unless the loan is made in permissible reliance upon that person's credit. Under C.F.R. 202.7, reliance is generally permissible when (1) the person's are co-applicants, (2) the guarantor signs as a party whose assets are necessary for the credit seeker to qualify as creditworthy, or (3) when a guarantor's signature is required to perfect a creditor's security interest in pledged assets which are jointly held.

2. Clarita Wooldridge also signed as an unconditional guarantor of the 1988 loan agreement and the 1989 loan modification.

3. The gender neutral language of the ECOA and its attendant regulations makes it apparent that Congress chose to protect women from credit discrimination by requiring that creditors treat all credit applicants—male and female, married and unmarried—in an identical manner. *See, United States v. American Future Systems, Inc.,* 743 F.2d 169 (3rd Cir.1984); *Markham v. Colonial Mortgage Service Co.,* 605 F.2d 566, 569 (D.C.Cir.1979).

The Act's civil liability provision provides an aggrieved applicant with an affirmative cause of action subject to a two year statute of limitations. 15 U.S.C. § 1691e(f). Further, by way of 15 U.S.C. § 1691e(c), the Act grants the district courts the power to "grant such equitable and declaratory relief as is necessary to enforce the requirements imposed under [the ECOA]."

The Court of Appeals for the Third Circuit has not addressed the issue of whether the ECOA may be asserted—either defensively or by way of recoupment—after the statute of limitations has run. In *American Security Bank v. York*, No. 91–1212, 1992 WL 237375, 1992 U.S.Dist. LEXIS 14309 (D.D.C. Sept. 1, 1992), the district court—when presented with facts similar to those before this Court—stated that in the absence of binding appellate guidance it was unwilling to limit the broadly remedial language of § 1691e(c) and would therefore permit defendants to assert an ECOA violation defensively—at least for damages by way of recoupment and possibly to void the underlying debt. *Id.*, 1992 WL 237375 at *3, 1992 U.S.Dist. LEXIS 14309 at *11. The majority of courts that have confronted the issue of whether an ECOA violation can be asserted defensively, however, have determined that an ECOA violation—if proved—does not render the offending instrument void.[4] *Diamond v. Union Bank & Trust*, 776 F.Supp. 542, 544 (N.D.Okla.1991); *see also, CMF Virginia Land, L.P. v. Brinson*, 806 F.Supp. 90 (E.D.Va.1992). These courts have hesitated to invalidate an arms length credit transaction where Congress specifically provides an injured debtor an affirmative statutory remedy. As the court in *Virginia Land* stated, "[i]nvalidation of the debt itself is a remedy too drastic for the Court to implement simply by reading between the lines of the ECOA." 806 F.Supp. at 95.

■ Accepting the merits of this reasoning, I note that an equally strong argument exists in support of the proposition that Con-

gress—in enacting the ECOA—intended that creditors not affirmatively benefit from proscribed acts of credit discrimination. To permit creditors—especially sophisticated credit institutions—to affirmatively benefit by disregarding the requirements of the ECOA would seriously undermine the Congressional intent to eradicate gender and marital status based credit discrimination. I conclude, therefore, that while an ECOA violation should not void the underlying credit transaction an offending creditor should not be permitted to look for payment to parties who, but for the ECOA violation, would not have incurred personal liability on the underlying debt in the first instance. This rule places a creditor in no worse position than if it had adhered to the law when the credit transaction occurred. A creditor may not claim to have relied factually upon a guarantor's assets if it has never requested nor received financial information regarding them. Further, a creditor may not claim legal reliance on a signature that was illegally required in the first instance.

■ With regard to other credit applicants involved in a tainted credit transaction—the primary credit seeker and permissibly required sureties or guarantors for example—I conclude that the purpose of the ECOA would not be furthered by permitting them to assert an alleged ECOA violation as a defense to liability on the underlying debt. *See, Riggs National Bank v. Linch*, 829 F.Supp. 163 (E.D.Va.1993). These parties' liability for the underlying debt exists independent of the alleged ECOA violation. Congress did not enact the ECOA to permit permissibly bound debtors to escape contractual liability when called upon to perform. To allow an ECOA defense to liability in such circumstances would not advance Congress' stated intent to allow creditworthy applicants to enter into credit transactions without regard to their marital status.

---

**4.** In assessing the proper scope of a district court's remedial power under 15 U.S.C. § 1691e(c) I note that, while Congress intended to eradicate credit discrimination through the ECOA, it did not evince an intent that the Act function as a broad forfeiture or punitive mea-

sure. The Act itself makes no mention of forfeiture as an appropriate remedy for ECOA violations and Congress specifically limited punitive damages available to an aggrieved applicant under the ECOA to $10,000.00. 15 U.S.C. § 1691e(b).

■ In stating that permissibly bound debtor parties may not assert an ECOA violation to escape liability on the underlying debt it does not follow that these parties cannot suffer an injury cognizable under the ECOA. A cognizable injury to such a party may occur if—as an objectively qualified loan applicant or guarantor—the party is nonetheless impermissibly required to secure a spouse's or other party's signature pursuant to a loan transaction. The ECOA affords these parties an affirmative cause of action for their actual "actual damages sustained" under 15 U.S.C. § 1691e(a). After the statute of limitations has run, however, the sole ECOA violation damages that these parties may assert are those that are cognizable by way of recoupment. Claims by way of recoupment are "never barred by the statute of limitations so long as the main action itself is timely." [5] *Bull v. United States*, 295 U.S. 247, 262, 55 S.Ct. 695, 700–01, 79 L.Ed. 1421 (1935).

■ Recoupment is a common law contract doctrine that allows "countervailing claims, which otherwise could not have been asserted together to be raised in a case based upon any one of them." *Lee v. Schweiker*, 739 F.2d 870 (3d. Cir.1984). A

claim may be asserted by way of recoupment if the claim arises from the same contractual transaction as the plaintiff's claim and essentially functions as a defense to that claim.[6] *Lee,* 739 F.2d at 875–76. However, "[i]f a ... claim is not a defense but rather a separate debt, the rationale for allowing recoupment does not exist." *In re University Medical Center,* 122 B.R. at 929.

The Court of Appeals for the Seventh Circuit was guided by this distinction in *Basham v. Finance America Corp.,* 583 F.2d 918 (7th Cir.1978), *cert. denied* in *First Nat. Bank v. Childs,* 444 U.S. 825, 100 S.Ct. 47, 62 L.Ed.2d 32 (1979). In that case the court disallowed debtor's claim for recoupment in the TILA context because:

> The TILA claim presented by debtors seeks affirmative damages under [the Truth in Lending Act]. They do not claim that they were actually damaged in any way as a result of the claimed TILA violation. Nor do they claim that the alleged TILA violations somehow negate the validity of the underlying loan transaction. The TILA claim is not directed at or an answer to the underlying debt.

*Basham,* 583 F.2d at 927–28.

■ I therefore conclude that while an action by way of recoupment may lie for

---

**5.** In the TILA context, the Supreme Court of Pennsylvania has stated:

> Recoupment goes to the foundation of the plaintiff's claim; it is available as a defense, although as an affirmative cause of action it may be barred by limitation. The defense of recoupment, which arises out of the same transaction as plaintiff's claim, survives as long as the cause of action upon the claim exists. *Household Consumer Discount Co. v. Vespaziani,* 490 Pa. 209, 415 A.2d 689, 694 (1980).

**6.** Plaintiff asserts that an action by way of recoupment should not pertain to alleged ECOA violations because Congress—in response to a conflict in the courts—specifically authorized actions by way of recoupment in regard to the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601–1667, but did not enact a parallel provision for the ECOA. Under such logic, however, courts would foreclose actions by way of recoupment in regard to federal statutory rights and obligations unless it was specifically provided for by Congress. To the contrary, actions by way of recoupment have been recognized by court decision in a broad variety of federal statutory settings including the bankruptcy code, *see, Lee,* 739 F.2d at 870; *In re Monongahela Rye Liquors,* 141

F.2d 864 (3rd Cir.1944), the internal revenue code, *see, Bull,* 295 U.S. at 247, 55 S.Ct. at 695, and—prior to Congressional clarification—in regard to TILA. *See, Ballew v. Associates Financial Services,* 450 F.Supp. 253 (D.C.Neb.1976); *Vespaziani,* 415 A.2d at 689.

I conclude that the proper guide in determining the scope of the recoupment doctrine rests in the requirements of the doctrine itself. An action by way of recoupment will lie where the facts of a particular controversy are such that one party possess an otherwise time barred claim which arises out of the transaction in question which would essentially function as a defense. *See, Lee,* 739 F.2d at 875. In such cases claims by way of recoupment are especially appropriate where the party against whom the action by way of recoupment is asserted is "obliged by natural justice and equity" to recognize that claim. *See, Bull,* 295 U.S. at 260–61, 55 S.Ct. at 700. Recoupment is permitted "for reasons sounding in equity. It is deemed inequitable, when a single transaction is at issue, to allow a debtor to cut off a creditor's defense and thus recover an amount greater than what the debtor is due under the transaction." *In re University Medical Center v. Sullivan,* 122 B.R. 919, 925 (E.D.Pa.1990), *aff'd* 973 F.2d 1065.

aggrieved credit applicants where an ECOA violation is alleged only violations that essentially function as a defense to all or a portion of the contract obligation are cognizable in this manner. Thus, the set of claims cognizable by way of recoupment is a limited one that excludes many of the "actual damages" available under 15 U.S.C. § 1691e [7]—such as humiliation, embarrassment, mental anguish and injury to credit and reputation—which are not defenses to liability on the underlying contract. Similarly, any claim defendant might make for attorney's fees under 15 U.S.C. § 1691e(d) lacks sufficient nexus with the underlying contract to be asserted by way of recoupment.

## IV. Conclusion

Defendants' assert that Liberty's alleged ECOA violation affords each of them either a defense to liability on the Guaranty Agreements or the right to proceed by way of recoupment. Defendants, however, are not similarly situated in regard to this assertion.

■ M. Freeman alleges that Liberty impermissibly required her signature on the Guaranty Agreements and that but for Liberty's violation of the ECOA she would have had no liability for the underlying loans in the first instance. If she can prove that it was impermissible for Liberty to require her signature the Court, pursuant to the power granted it in 15 U.S.C. § 1691e(c), will bar plaintiff from recovery against her on the Guaranty Agreements.

■ On the other hand, Liberty permissibly required C. Freeman's signature on the Guaranty Agreements. As a permissibly bound party he may not assert Liberty's alleged ECOA violation to escape liability on the underlying debt. Further, because the statute of limitations has run, any affirmative cause of action that he might have asserted under the ECOA is now time barred. Therefore, any claim that C. Freeman might assert based upon Liberty's alleged violation of the ECOA is limited to a claim cognizable defensively as an action by way of recoupment. From the record presently before the Court there is no indication that, as a result of the alleged ECOA violation, he has suffered an injury that he might assert as a defense to his contract liability under the Guarantee Agreements.

■ Last, I conclude that Tracor—in its capacity as guarantor—is precluded from invoking Liberty's alleged ECOA violation either as a defense to liability or by way of recoupment.[8] Liberty permissibly required Tracor and C. Freeman to sign the Guaranty Agreements. If Liberty impermissibly required M. Freeman's signature it did so with respect to C. Freeman's signing as a guarantor and not with respect to Tracor's guarantee. Liberty's decision to require Tracor as a guarantor was separate and distinct from its decision to require Tracor's stockholder to sign as a guarantor. *See, First Fidelity Bank v. Best Petroleum,* 757 F.Supp. 293 (S.D.N.Y.1991). Thus Tracor—in its capacity as guarantor—lacks sufficient nexus with the alleged ECOA violation to invoke its protection.

## ORDER

AND NOW, this 29 day of November, 1993 upon review of the memoranda of parties it is hereby ORDERED that:

Plaintiff's motion for summary judgement will be held in abeyance for thirty days from

---

7. The ECOA permits an aggrieved applicant to recover "for any actual damages sustained by such applicant." 15 U.S.C. § 1691e(a). Courts have construed "actual damages" to include "out-of-pocket monetary losses, injury to credit reputation and mental anguish, humiliation or embarrassment." *Fischl v. General Motors Acceptance Corp.,* 708 F.2d 143, 148 (5th Cir.1983); *Anderson,* 666 F.2d at 1274.

8. As noted, corporations and partnerships are not excluded from protection under the ECOA. Thus, under facts that differ from those before the Court, a general partner that is a corporation could sustain an injury cognizable under the ECOA if the partnership suffered an injury because a guarantor was impermissibly required to obtain a spouse's signature.

In this instance, however, the partnership has not alleged any injury as a result of the alleged ECOA violation. Further, Wooldridge Construction—the second corporate general partner in RSKC—is not a party to this suit. Thus it is clear that Tracor asserts the alleged ECOA violation in its capacity as guarantor rather than as a RSKC partner.

the entry of this Order to permit defendants an opportunity to respond to that motion and to allow plaintiff an opportunity to amend or supplement its filings presently before the Court.