**SOUTHWESTERN PENNSYLVANIA REGIONAL COUNCIL, INC.,** Appellant

v.

**Charles C. GENTILE and Stephanie Gentile, Appellees.**

Superior Court of Pennsylvania.

Argued Dec. 6, 2000.

Filed June 19, 2001.

lack of guilt. *See Commonwealth ex rel. Butler v. Rundle,* 429 Pa. 141, 239 A.2d 426, 429 (1968).

Paul D. Burke, Pittsburgh, for appellant.

Theodore E. Breault, Pittsburgh, for appellee.

Before: DEL SOLE, LALLY–GREEN and BROSKY, JJ.

LALLY–GREEN, J.

¶ 1 Appellant, Southwestern Pennsylvania Regional Council, Inc., appeals from the judgment entered on July 11, 2000, in favor of Defendants/Appellees, Charles C. Gentile and Stephanie Gentile. In this case of first impression, we are asked to determine whether the trial court erred in holding that Appellant violated the federal Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.*, by requiring a spousal signature on a loan guarantee.[2] We reverse and remand for further proceedings.

¶ 2 The factual and procedural history of the case is as follows. Appellant is an economic development agency which administers funds of the Appalachian Regional Commission, a federal program designed to support business and employment growth in Appalachian states.

¶ 3 Charles Gentile is president of Fayco Plastics, Inc. ("Fayco"). On April 20, 1994, Fayco applied for a $100,000 loan with Appellant. *See,* Plaintiff's Exhibit 5. The Personal Financial Statement (PFS) of Charles Gentile and Stephanie Gentile is attached to the application. *Id.,* Exhibit "I." The PFS lists Stephanie Gentile as a "Co–Applicant." *Id.* at 1. Below Stephanie Gentile's signature is the caption "Co–Applicant's signature (if you are requesting the financial accommodation jointly)." *Id.* at 4. The "Assets" section of the PFS lists the marital residence, worth $350,000, and a real estate investment worth $100,000. *Id.* at 3. Stephanie Gentile owns one-half of the marital residence and is the full legal owner of the real estate investment. *Id.*

¶ 4 Appellant issued the loan to Fayco. On June 13, 1994, Fayco executed a $100,000 note in favor of Appellant along with a guarantee signed by Charles Gentile in his capacity as president of Fayco. Docket Entry 1, Exhibits A–B.

2. The parties do not dispute that the trial court had jurisdiction over Stephanie Gentile's ECOA claim. *See,* 15 U.S.C. §§ 1691e(c), 1691e(f) (ECOA claims may be brought in federal court or "any other court of competent jurisdiction"). Moreover, as noted further *infra,* Stephanie Gentile asserted an ECOA violation as a **defense** to a state-law complaint in confession of judgment.

¶ 5 On September 21, 1994, Fayco applied for a second loan from Appellant. Again, Charles and Stephanie Gentile executed a PFS which listed the marital residence and the real estate investment, along with items such as Stephanie Gentile's income and other loans guaranteed by Charles and Stephanie Gentile. Plaintiff's Exhibit 6, Exhibit "I."

¶ 6 Appellant issued the second loan to Fayco. On October 18, 1994, Fayco executed a $100,000 note in favor of Appellant along with a guarantee signed by Charles Gentile and Stephanie Gentile in their individual capacities. Docket Entry 1, Exhibits A–B.

■ ¶ 7 On October 2, 1997, Appellant filed a Complaint in Confession of Judgment, alleging that Fayco defaulted because it failed to make timely payments on the notes. Docket Entry 1. Appellant confessed judgment against Charles and Stephanie Gentile in the amount of $149,639.97. *Id.*[3] On November 6, 1997, Stephanie Gentile filed a petition to open and/or strike the confessed judgment. Docket Entry 3.[4] Stephanie Gentile alleged, *inter alia*, that Appellant illegally required her signature on the second guarantee in violation of the ECOA, 15 U.S.C. § 1691(a)(1). *Id.* On December 19, 1997, the trial court opened the judgment in order to allow Stephanie Gentile to assert an ECOA defense. Docket Entry 6.[5]

¶ 8 On September 24, 1998, the court held a non-jury trial to determine whether Stephanie Gentile was personally liable on the guarantees. The first witness to testify at trial was Rita Pollock, Appellant's executive director. Ms. Pollock stated that she was not familiar with the day-to-day administration of the loan to the Gentiles, and did not know whether these particular loans would have been forthcoming without a spousal guarantee. N.T., 9/24/98, at 11–12, 14. The court then admitted Ms. Pollock's deposition testimony from a prior case, in which she stated that "it is the practice of the Council to have personal guarantees of the spouses of the principals in order to secure adequate collateral," regardless of the independent creditworthiness of the business applicant. *Id.* at 14. The prior case was *Southwest Pennsylvania Regional Council v. James C. Morriston and Terry Morriston. Id.* at 17. Mr. Morriston was a Fayco executive. *See,* Plaintiff's Exhibit 6. A spousal guarantee was required in the *Morriston* case. N.T., 9/24/98, at 17. The Morristons' PFS was included in both of the Fayco loan applications. *See,* Plaintiffs' Exhibit 5, 6.

¶ 9 The next witness to testify was Michelle Hartle, manager of Appellant's business financing program during the period in question. *Id.* at 18. Ms. Hartle testified that she received the first loan application from Fay–Penn Economic Development Corporation, a company that had been

---

**3.** A confession of judgment clause "permits the creditor or its attorney simply to apply to the court for judgment against the debtor in default without requiring or permitting the debtor or guarantors to respond at that juncture." *Silverman v. Eastrich Multiple Investor Fund, L.P.,* 51 F.3d 28, 31 (3rd Cir.1995).

**4.** Charles Gentile has not contested the entry of judgment against him.

**5.** Stephanie Gentile also argued that the default judgment should be stricken because judgment was entered against her as to both

loans, but she did not sign the first guarantee. Trial Court Opinion, 12/19/97, at 2. The trial court rejected this argument, noting that under the express terms of the second guarantee, Stephanie Gentile became a surety "for the full and timely payment ... by [Fayco] of the principal and interest on each and every loan or advance made by Lender to [Fayco] or on [Fayco's] behalf (both those now in existence and those that shall hereafter be made)." *Id.* Stephanie Gentile has not challenged this determination.

working with Fayco. *Id.* at 19; *see,* Plaintiff's Exhibit 1. Ms. Hartle reviewed the application and suggested a number of corrections, including a request that Mr. and Mrs. Morriston complete and sign their Personal Financial Statements. *Id.* at 21; *see,* Plaintiff's Exhibit 2. Ms. Hartle explained that she made this request because "the information was through 1992 and we were reviewing the application in '94 and it was not signed by either person." *Id.* at 21. Before receiving the first application from Fay–Penn, Ms. Hartle had not requested any financial statements from the Morristons. *Id.* Moreover, she had not requested joint financial statements from the Gentiles. *Id.* In short, the application was submitted to Appellant with joint PFS's included; Appellant did not request joint statements. *Id.* at 23. The joint financial statements of the Morristons and the Gentiles were considered in determining whether to grant the loan. *Id.* at 24. The same was true of the second loan, which was essentially an extension of the first loan. *Id.* at 26–27. As Ms. Hartle explained, "we are allowed to have borrowers with exposure up to $200,000 in a 12–month period. They had only borrowed $100,000 through the first loan program— or through the first loan, they were allowed to have another $100,000." *Id.* at 26.

¶ 10 After Ms. Hartle testified, the defense introduced the deposition testimony of Stephanie Gentile. *Id.* at 30. Mrs. Gentile testified that she was not an applicant on either note, she did not apply for either loan, her creditworthiness was not investigated with regard to either loan, and she did not receive the proceeds of either note. N.T., 12/4/97, at 8–11. Mrs. Gentile is not an officer, principal, shareholder, owner, or employee of Fayco. *Id.* at 9–10. On October 14, 1994, she signed the second guarantee agreement at Appellant's office. *Id.* at 12. She signed the guarantee because "[Appellant] just said I had to sign it," but she did not read it first. *Id.* She did not discuss the documents with her husband before signing them. *Id.* at 17–18. To her knowledge, the reason for signing the second guarantee is that she was married to Charles Gentile. *Id.* at 13. She does not recall signing the PFS from the first application. *Id.* at 21–22.

¶ 11 On January 25, 1999, the trial court issued its verdict. Docket Entry 16. The court held that the guarantee executed on October 18, 1994, violated the ECOA. *Id.* Accordingly, judgment was entered in favor of Stephanie Gentile. *Id.* Appellant's motion for post trial relief was filed on February 8, 1999, and denied on July 11, 2000. Docket Entries 17, 20. In its supporting opinion, the court reasoned that Appellant violated the ECOA because it had a policy and practice to require a spousal guarantee regardless of the creditworthiness of the applicant. Trial Court Opinion, 7/11/2000, at 3–4. The trial court did not express any opinion as to the credibility of individual witnesses. This appeal followed.[6]

¶ 12 Appellant raises two issues on appeal:

A. Whether the joint financial statements of the Defendants were voluntarily provided as part of a loan application to Plaintiff.

B. Whether a lender, under the Equal Credit Opportunity Act, 15 U.S.C. § 1691, et seq., may consider and rely upon assets owned by a husband and/or wife in extending credit when

---

**6.** The trial court did not request a Concise Statement of Matters Complained of on Appeal.

such assets are voluntarily provided as part of a loan application.

Appellant's Brief at 4.

¶ 13 Appellant argues that the trial court committed an error of law in holding that Appellant violated the ECOA because the undisputed evidence at trial indicates that Stephanie Gentile was a co-applicant on the loans. While Appellant does not explicitly request judgment notwithstanding the verdict (JNOV), it appears that Appellant does seek this remedy. *Id.* at 17 ("the decision of the lower Court should be reversed and the judgment in favor of Plaintiff and against Stephanie Gentile reinstated").

¶ 14 Our standard of review is well settled.

> [T]here are two bases upon which a judgment n.o.v. can be entered: one, the movant is entitled to judgment as a matter of law, and/or two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, a court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

*Moure v. Raeuchle,* 529 Pa. 394, 402–403, 604 A.2d 1003, 1007 (1992) (citations omitted).

*Davis v. Berwind Corp.,* 547 Pa. 260, 690 A.2d 186, 189 (1997).

■ ¶ 15 For the reasons set forth *infra,* we decline to grant JNOV, and instead grant the less drastic remedy of a new trial. When deciding whether to grant a new trial, "we must determine whether the trial court clearly and palpa-

bly abused its discretion or committed an error of law which affected the outcome of the case." *Brinich v. Jencka,* 757 A.2d 388, 395 (Pa.Super.2000), *appeal denied,* 771 A.2d 1276 (Pa.2001). When reviewing a judgment from a non-jury trial, "[w]e must determine whether the findings of the trial court are supported by competent evidence and whether the trial judge committed error in the application of law. Additionally, findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed absent error of law or abuse of discretion." *Hester v. Pennsylvania Financial,* 743 A.2d 926, 927 (Pa.Super.1999), *appeal denied,* 766 A.2d 1249 (Pa.2000).

¶ 16 The ECOA states that "it shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction [,] on the basis of ... marital status[.]" 15 U.S.C. § 1691(a)(1). Federal regulations implementing the ECOA provide as follows:

> **Signature of spouse or other person— (1) Rule for qualified applicant.** Except as provided in this paragraph, a creditor shall not require the signature of an applicant's spouse or other person, other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested.

12 C.F.R. 202.7(d)(1).

■ ¶ 17 "[T]he ECOA was enacted to ensure fairness in creditors' consideration of credit applications." *Freeman v. Koerner Ford of Scranton, Inc.,* 370 Pa.Super. 150, 536 A.2d 340, 341 (1987). Through the ECOA, "Congress chose to protect women from credit discrimination by requiring that creditors treat all credit applicants—male and female, married and unmarried—in an identical manner." *In-*

*tegra Bank v. Freeman,* 839 F.Supp. 326, 328 n. 3 (E.D.Pa.1993). On the other hand, "Congress did not enact the ECOA to permit permissibly bound debtors to escape contractual liability when called upon to perform." *Id.* at 329.

¶ 18 Guarantors are considered "applicants," and thus are protected by the ECOA. *See, Silverman,* 51 F.3d at 31. A guarantor may assert an ECOA violation as a defense to a state-court confession of judgment. *Id.* at 32. If the defense is successful, the guarantor's obligation is voided, but the underlying debt and any other guarantees are not voided. *Id.* at 33.

¶ 19 When determining whether a creditor has violated the ECOA by requiring a spousal signature, it is critical to determine whether the husband and wife were joint applicants on the loan. As noted above, lenders are permitted to require spousal signatures where the spouses are joint applicants. 12 C.F.R. 202.7(d)(1); *Midlantic Nat'l Bank v. Hansen,* 48 F.3d 693, 699 (3rd Cir.1995), *cert. denied,* 515 U.S. 1184, 116 S.Ct. 32, 132 L.Ed.2d 914 (1995).[7] "A 'joint applicant' is 'someone who applies contemporaneously with the applicant for shared or joint credit' and not someone 'whose signature is required by the creditor as a condition for granting the credit requested.'" *Midlantic,* 48 F.3d at 699, *citing,* Official Staff Interpretation to 12 C.F.R. § 202.7(d)(1); *see also, Riggs Nat'l Bank v. Webster,* 832 F.Supp. 147, 151 (D.Md.1993) (bank does not violate ECOA by requiring spouse's signature where she is a *de facto* joint applicant, as evidenced by the fact that the financial statement used to support the loan contained items owned jointly or wholly by the spouse); *Bank of America Nat'l Trust & Sav. Asso. v. Hotel Rittenhouse Associates,* 595 F.Supp. 800, 808 (E.D.Pa.1984) (bank does not violate ECOA when spouses offered to execute joint guarantee, and an individual guarantee was therefore never contemplated).

¶ 20 In the instant case, the trial court held that Appellant violated the ECOA because it had a practice and policy to require spousal signatures for all loans such as the Gentiles', regardless of the creditworthiness of an individual applicant. Trial Court Opinion, 7/11/2000, at 3. We recognize that where a married person seeks individual credit and is individually creditworthy, a lender violates the ECOA if it nevertheless enforces a blanket policy to require a spousal signature. *Anderson v. United Finance Co.,* 666 F.2d 1274, 1276 (9th Cir.1982). On the other hand, pursuant to the authorities set forth *supra,* a lender does not violate the ECOA where the spouses present themselves as joint applicants, or where the credit seeker is not individually creditworthy absent a spousal signature. In other words, the mere existence of a policy to require spousal signatures does not necessarily result in an ECOA violation unless that policy was enforced contrary to the principles of the ECOA itself.

¶ 21 Here, the trial court appears to have relied heavily (if not exclusively) on the existence of a policy to require spousal signatures, without considering the totality of the circumstances surrounding whether the Gentiles were joint applicants or

7. Similarly, lenders are generally permitted to require a spousal signature where (1) "the guarantor signs as a party whose assets are necessary for the credit seeker to qualify as creditworthy, or [2] when a guarantor's signature is required to perfect a creditor's security interest in pledged assets which are jointly held." *Integra Bank,* 839 F.Supp. at 328 n. 1; *see also, Philadelphia Factors, Inc. v. Gordon,* 1999 WL 225866 (E.D.Pa. Apr. 16, 1999); *In re DiPietro,* 135 B.R. 773, 777 (Bankr.E.D.Pa. 1992); 12 C.F.R. 202.7(d)(2), (d)(3), (d)(4).

whether Charles Gentile was individually creditworthy. Indeed, many facts in the record suggest that the Gentiles sought the loans as joint applicants. For example, as noted above, the Gentiles' PFS for the first loan lists Stephanie Gentile as a "Co–Applicant." Below Stephanie Gentile's signature is the caption "Co–Applicant's signature (if you are requesting the financial accommodation jointly)." Second, the PFS's submitted with each loan application listed assets which were owned either jointly, or by Stephanie Gentile outright. Third, the record does not establish that Appellant actually requested or demanded that the Gentiles submit a joint application; rather, the Gentiles appear to have submitted a joint application on their own volition. Finally, the Gentiles did not disabuse Appellant of the impression that they were indeed joint applicants.

¶ 22 In short, the trial court erred by focusing on the existence of Appellant's policy, without taking into account the possibility that: (1) the policy was not actually enforced against Stephanie Gentile; or (2) if it was applied to her, it was done so appropriately because she was a joint applicant.[8]

¶ 23 In his Dissenting Opinion, our esteemed colleague, Judge Brosky, contends that the learned trial court made a factual determination that the Gentiles were not joint applicants. See, Dissenting Opinion at 4 ("in this appeal, however, Appellant's argument is limited to the single factual issue of whether the Gentiles were joint applicants. The trial court determined that they were not"). The Dissent also contends that we should not disturb this factual finding. Id. at 4–5.

¶ 24 In our view, the trial court did not find as a fact that the Gentiles were joint appellants. Rather, the trial court found as a fact that Appellant **required** a spousal signature, and that joint signatures were not provided **voluntarily.** See, Trial Court Opinion, 7/11/2000, at 3–4. Our concern is not with this factual finding. As we observed above, requiring a spousal signature does not, in and of itself, constitute an ECOA violation.

---

8. The trial court cites to Plaintiff's Trial Exhibit 2 as evidence that Appellant required joint financial statements in violation of the ECOA. Trial Court Opinion, 7/11/2000, at 4. This conclusion is not supported by the record. Paragraph 9 of this Exhibit requested that the **Morristons**, not the Gentiles, each sign their PFS. Moreover, Ms. Hartle explained at trial that she requested the Morristons' signatures simply because their Morristons' PFS was out of date and not signed by either spouse. The trial court did not state that it found Ms. Hartle's testimony incredible in any manner. In other words, it would appear that Ms. Hartle was attempting to correct technical defects in a joint application, not to require spousal signatures in violation of the ECOA.

The trial court also cites to a commitment letter from Integra Bank as evidence that "spouses of corporate owners were required to execute loan documents as guarantors." Trial Court Opinion, 7/11/2000, at 4, *citing,*

Plaintiff's Exhibit 5. This exhibit is the first loan application, which requests that the borrower attach a commitment letter from "participating commercial lenders." Id. at p. 11. Exhibit E is a commitment letter from Integra Bank, which states that the Bank will extend amortizing term credit up to $140,000 "as described in the Summary of Terms and Conditions attached hereto." Id. at p. 1. The Summary of Terms and Conditions lists Stephanie Gentile as a guarantor. A "Narrative Collateral Evaluation" attached to the commitment letter recommends the personal guarantee of both of the Morristons and both of the Gentiles.

It is far from clear that this document establishes that Appellant violated the ECOA. First, the letter is from Integra Bank, who is not a party to this action. Next, for the reasons set forth above, requiring a spousal signature does not necessarily violate the ECOA: for example, if the parties were joint applicants, a spousal signature is appropriate.

¶ 25 Appellant argues that a spousal signature was appropriate in this case because the Gentiles were joint applicants. The trial court did not expressly determine whether the Gentiles were joint applicants. Because the disposition of this issue is critical to a proper analysis of Stephanie Gentile's ECOA claim, we have remanded for a new trial.

¶ 26 For the reasons set forth above, we remand for a new trial in order to give the court the opportunity to analyze all of the relevant facts and circumstances, and to render a decision in accordance with the principles set forth herein.[9]

¶ 27 Judgment vacated. Case remanded for a new trial. Jurisdiction relinquished.

¶ 28 Judge BROSKY files a Dissenting Opinion.

BROSKY, J., Dissenting.

¶ 1 I respectfully dissent from the conclusion of the Majority that a new trial is warranted in this case.

¶ 2 Southwestern Pennsylvania Regional Council, Inc. contends in this appeal that the trial court erred when it found that Appellant violated the Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691.

The two specific issues presented in the "Statement of the Questions Involved" are:

A. Whether the joint financial statements of the [Gentiles] were voluntarily provided as part of a loan application to [Appellant].

B. Whether a lender, under the Equal Credit Opportunity Act, 15 U.S.C. § 1691, et seq. may consider and rely upon assets owned by a husband and/or wife in extending credit when such assets are voluntarily provided as part of a loan application.

Brief for Appellant at 4.

¶ 3 It is well-settled that issues not presented in a party's "Statement of Questions Involved" have been waived and are not preserved for review. *Bailey v. Storlazzi,* 729 A.2d 1206 (Pa.Super.1999); Pa. R.A.P. 2116(a). A fair reading of Appellant's brief reveals its single argument: that the Gentiles were joint applicants and were treated as such by Appellant, and thus no violation of the ECOA could have occurred.

¶ 4 This action was filed by Appellant against Appellee and her husband, Charles C. Gentile, by a complaint in confession of judgment. Appellee Stephanie Gentile

9. The Dissent also contends that evidence in the record supports the proposition that the Gentiles were not joint applicants. Dissenting Opinion at 5, citing, N.T., 9/24/98, at 13–15; Plaintiff's Exhibits 2, 6; Defendant's Exhibit 1. We respectfully disagree. Pages 13–15 of the trial transcript contains testimony from Rita Pollock establishing, at best, that Appellant had a policy of requiring spousal signatures. Plaintiff's Exhibit 2 is discussed in footnote 8, *supra.* Plaintiff's Exhibit 6 is the second loan application in its entirety. Finally, Defendant's Exhibit 1 is the transcript of Rita Pollock's deposition in its entirety. In the absence of more specific citations to the certified record, and in the absence of credibility determinations, we are reluctant to conclude that any of this evidence conclusively establishes whether the Gentiles were joint applicants. Rather than make such a determination ourselves, it is appropriate to remand for the trial court to make full and thorough findings of fact.

The Dissent also suggests that we have exceeded the scope of Appellant's Statement of Questions Involved by remanding for the trial court to consider, *inter alia,* whether Charles Gentile was individually creditworthy. Dissenting Opinion at 4. We agree with the Dissent that Appellant's Statement of Questions Involved is limited to the issue of whether the Gentiles were joint applicants. Because the issue of Charles Gentile's individual creditworthiness may be relevant to the question of whether the Gentiles were joint applicants, it is appropriate for the trial court to consider this issue on remand.

successfully petitioned the trial court to open judgment entered against her, and a nonjury trial was held on September 24, 1998. The trial court concluded that the Guaranty Agreement executed by Appellee violated the ECOA, and consequently entered a verdict in her favor.[10]

¶ 5 The ECOA provides, in relevant part, as follows.

### § 1691. Scope of prohibition

**(a) Activities constituting discrimination.** It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction—

> (1) on the basis of race, color, religion, national origin, sex or **marital status**, or age[.]

15 U.S.C. § 1691(a)(1)(emphasis added). Additionally, the implementing federal regulations further provide that "a creditor shall not require the signature of an applicant's spouse or other person, other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested." 12 C.F.R. § 202.7(d).

¶ 6 Courts interpreting these provisions have concluded that "while an ECOA violation should not void the underlying credit transaction[,] an offending creditor should not be permitted to look for payment to parties who, but for the ECOA violation, would not have incurred personal liability on the underlying debt in the first in-stance." *Integra Bank/Pittsburgh v. Freeman,* 839 F.Supp. 326, 329 (E.D.Pa.1993). Thus where a creditor has violated the ECOA, a party who would not otherwise be liable on the obligation may assert that violation as a defense. *Silverman v. Eastrich Multiple Investor Fund,* 51 F.3d 28 (3rd Cir.1995).

¶ 7 Following hearing, the trial court concluded that Appellant violated the ECOA because it required Appellee Stephanie Gentile to make a personal guarantee for her husband on the obligation, as was its policy and practice. The trial court also found that the lending institution had similar requirements of spouses of applicants. Additionally, the trial court specifically rejected Appellant's argument that Appellee and her husband "voluntarily" provided joint financial statements or a joint application for the loan. Trial Court Opinion, 7/11/00, at 3–4.

¶ 8 The majority concludes that the trial court failed to determine, based upon the "totality of the circumstances," whether the Gentiles were in fact joint applicants or whether Charles Gentile was individually creditworthy; and further that a new trial is required to give the trial court an opportunity to conduct a proper analysis of the issues presented. In this appeal, however, Appellant's argument is limited to the single factual issue of whether the Gentiles were joint applicants.[11] The trial court determined that they were not. After review, I would conclude that this finding by

---

10. This court's scope of review of a verdict entered in a nonjury trial is limited to a determination of whether the findings are supported by the evidence and whether the trial court committed an error of law. *Hester v. Pennsylvania Financial,* 743 A.2d 926 (Pa.Super.1999). Additionally, "[t]he trial judge sits as the finder of fact. The weight to be assigned the testimony of the witnesses is within the exclusive province of the fact-finder." *Lou Botti Construction v. Harbulak,* 760

A.2d 896, 898 (Pa.Super.2000). The trial judge thus assesses credibility, and may choose to believe all, part, or none of the evidence presented. *Id.*

11. Indeed, Appellant asserts in its brief that Charles Gentile's creditworthiness as an individual is irrelevant, because Appellant has always considered the Gentiles to be joint applicants. Brief for Appellant at 15.

the trial court is supported by the record. *See* N.T., 9/24/98, at 13–15; Plaintiff's Exhibits 2, 6; Defendant's Exhibit 1. I find no merit to Appellant's argument that certain other contrary evidence supports its position, because the trial court as factfinder was entitled to evaluate and assess the evidence. It is the province of the trial court to choose to believe all, part, or none of the testimony, and our review is limited to a determination of whether the trial court's findings are supported by the evidence or whether an error of law was committed.

¶ 9 The trial court thus disagreed with Appellant's position that the Gentiles were joint applicants. As such, the Appellant's ECOA violation was properly asserted as a defense to, and voided, Appellee Stephanie Gentile's obligation on the loan. *See Silverman, supra.* Based upon the narrow issue presented on appeal, I would therefore conclude that the judgment entered on the nonjury verdict in favor of Appellee Stephanie Gentile must be affirmed. Accordingly, I must dissent.