J-S33010-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MANUFACTURERS AND TRADERS TRUST COMPANY, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| KELLY JUSTOFIN, | |
| Appellee | No. 2045 MDA 2016 |

Appeal from the Judgment Entered January 10, 2017
In the Court of Common Pleas of Luzerne County
Civil Division at No(s): 2015-00977

BEFORE:  BENDER, P.J.E., OTT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:          **FILED JUNE 21, 2017**

Appellant, Manufacturers and Traders Trust Company ("M&T Bank"), appeals from the judgment entered on January 10, 2017, in the Court of Common Pleas of Luzerne County, following a non-jury verdict in favor of Appellee, Kelly Justofin.[1]  After careful review, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] M&T Bank purports to appeal from the November 21, 2016 order denying its motion for reconsideration.  However, "an appeal to this [C]ourt can only lie from judgments entered subsequent to the trial court's disposition of post-verdict motions, not from the order denying post-trial motions." ***Fanning v. Davne***, 795 A.2d 388, 392 (Pa. Super. 2002) (citing ***Johnston the Florist, Inc. v. TEDCO Constr. Corp.***, 657 A.2d 511, 514 (Pa. Super. 1995)).  Nevertheless, a final judgment entered during pendency of an appeal is sufficient to perfect appellate jurisdiction.  ***Drum v. Shaull Equipment and Supply, Co.***, 787 A.2d 1050 (Pa. Super. 2001).  Accordingly, by order dated January 4, 2017, we directed M&T Bank to
*(Footnote Continued Next Page)*

On or about October 17, 2016, the trial court issued the following Findings of Fact and Conclusions of Law, which the court adopts as its Pa.R.A.P. 1925(a) opinion for purposes of this appeal:

Findings of Fact

1. On April 24, 2006, Christopher Justofin applied for a loan with M&T Bank on behalf of Christopher D. Justofin, D.O., P.C.

2. Christopher Justofin and Kelly Justofin [("Appellee")] were husband and wife at all times relevant to the loan transaction of Christopher D. Justofin.

3. On April 24, 2006, Christopher Justofin had a face-to-face meeting with bank employee James Minniti.

4. Prior to the April 24, 2006 meeting, Christopher Justofin supplied M&T Bank with a business tax return, joint income tax returns for [Appellee] and himself, and a Personal Financial Statement of Christopher Justofin and [Appellee]. Minniti used these documents to complete the loan application. M&T Bank never sought, nor received, any individual or separate financial information for Christopher Justofin and [Appellee].

5. [Appellee] was not present when Christopher Justofin met with Minniti on April 24, 2006[,] regarding the proposed loan.

6. Later, [Appellee] signed the second page of a document entitled "M&T Bank QuikCredit Application" (the "Credit Application"), but took no part in the preparation of, nor did she read, the document.

7. In the Credit Application, [Appellee] was simply labeled "spouse" and, on the lines for personal net worth and

*(Footnote Continued)* ———————————

praecipe for entry of judgment as required by Pa.R.A.P. 301. M&T Bank complied, and a judgment was entered on January 10, 2017. In accordance with Pa.R.A.P. 905(a), we treat the notice of appeal previously filed as having been filed after the entry of judgment and on the date of entry. Hence, no jurisdictional defects impede our review.

personal net income, no amounts were given other than reference to Christopher Justofin's amounts listed above those lines.

8. Minitti [*sic*] testified that, from the Credit Application, he believed Christopher and [Appellee] held joint assets; however, he could not identify which assets he believed were joint or provide any evidence to support his assumption.

9. Further, Minitti [*sic*] indicated that he could not determine from the joint tax return provided by Christopher Justofin whether [Appellee] had any individual income.

10. According to Minitti [*sic*], he included [Appellee] with Christopher Justofin's income information because she was his spouse.

11. [Appellee] is not a shareholder or officer of her husband's professional corporation, she did not receive any of the proceeds of the loan, she did not apply for the loan to her husband or her husband's corporation, and she prepared no personal financial statement.

12. On May 9, 2006, M&T Bank loaned Christopher Justofin the principal amount of $205,000.00 with interest, in accordance with the terms and conditions of the Note that he executed at that time.

13. Also[,] on May 9, 2006, [Appellee] executed a Guaranty and Co-Signor Notice regarding Christopher Justofin's obligations under the Note.

14. At no time between April 24, 2006[,] and the loan closing on May 9, 2006[,] was [Appellee] ever advised that she was required to guaranty the loan of her husband.

15. At no time[,] in the spring of 2006[,] was [Appellee] ever advised by any employee of M&T Bank that she was required to sign a personal guaranty of any loan made to her husband, Christopher Justofin, or his corporation, until the closing on May 9, 2006.

16. On May 9, 2006, [Appellee] accompanied her husband to a closing of his loan at M&T Bank, not knowing that her attendance was required. At the closing, she was advised for the first time of the requirement that she sign a personal guaranty of the loan and that, without that signature, the

loan would not be closed. She complied with that request to accommodate her husband, and also signed a mortgage on the vacant building lot she and her husband owned, the only asset she owned jointly with her husband.

17. On May 9, 2011, the 2006 Note was amended and restructured in the amount of $103,889.93, the outstanding balance on the 2006 Note.

18. Also[,] on May 9, 2011, [Appellee] executed a guaranty of the Amended Note.

19. No payments have been made on the loan by either Christopher Justofin or [Appellee] since August 9, 2013.

20. In April[] 2006[,] and continuing through May[] 2011, all of Christopher Justofin's financial assets, other than a jointly titled piece of real property, were titled solely in his name or in the name of his professional corporation.

21. In April[ of] 2006, [Appellee] had no assets other than a vacant building lot she owned with her husband, which was mortgaged in the May 9, 2006 transaction, and an individual personal checking account with an average balance of $100.00.

22. At no time in April[] 2006, May[] 2006, or May[] 2011[,] was [Appellee] ever advised that Christopher Justofin was required to have an additional party guaranty his loan or that he was not creditworthy.

23. Further, in April[] 2007, Christopher D. Justofin qualified for, and was granted, a $311,000.00 loan from M&T Bank. [Appellee] did not qualify for the credit and was not required to sign a Promissory Note imposing personal liability or to guaranty the loan. In connection with that transaction, [Appellee] signed only a mortgage necessary to encumber the property.

24. The evidence reflects that Christopher Justofin was independently creditworthy at the time of the closing of the loan. Further, M&T Bank required [Appellee] to execute a guaranty of the loan solely due to her status as Christopher's spouse and despite the fact that she had no independent wealth or income.

## Conclusions of Law

1. The Equal Credit Opportunity Act (ECOA) of 1974, (15 U.S.C. § 1691 et seq. (2010)), as implemented by the Federal Reserve's Regulation B (12 C.F.R. Part 202), applies to the instant matter where a spouse who provided a guaranty is asserting the ECOA as a defense to collection of the underlying debt. ***See Silverman v. Eastrich Multiple Investor Fund***, L.P., 51 F.3d 28 (3rd Cir. 1995); ***see also Southwestern Pennsylvania Regional Council, Inc. v. Gentile***, 776 A.2d 276, 282 (Pa. Super. 2001).

2. The ECOA states, "[i]t shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction … on the basis of … marital status." 15 U.S.C. § 1691(a)(1)(2010).

3. Generally, Regulation B prohibits a creditor from requiring "…the signature of an applicant's spouse or other person, other than a joint applicant, on any credit instrument[,] if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested." 12 C.F.R. § 202.7(d)(1)(2016).

4. The spouse-guarantor rule, as adopted by the United States Court of Appeals for the Third Circuit in ***Silverman***, allows a spouse-guarantor to assert the ECOA as a defense against an action to collect an underlying debt. ***Silverman***, 51 F.3d 28.

5. "To prove a violation of the spouse-guarantor rule, a spouse-guarantor need only prove that her spouse applied for credit, and either the creditor required the signature of the applicant's spouse if the applicant was individually creditworthy, … or the creditor required that the spouse be the additional party when it determined that the applicant was not independently creditworthy and would need the support of an additional party." ***RL BB Acquisition, LLC v. Bridgemill Commons Dvelopment*** [*sic*] ***Group, LLC***, 754 F.3d 380, 389 (6th Cir. 2014) (internal citations omitted).

6. Once a spouse-guarantor has met his/her burden of proving such a violation, the burden of proof then shifts to the creditor to demonstrate that an exception to the general prohibition applies. ***Id.*** (internal citations omitted); 12 C.F.R. § 202.7(d)(2)-(4).

7. The record in the instant matter reflects that [Appellee] was required to sign the guaranty to close the loan to her husband, despite the fact that Christopher Justofin was independently creditworthy. ***See RL BB***, 754 F.3d at 389.

8. Additionally, there is no evidence that [Appellee] was an additional party necessary to render Christopher Justofin creditworthy where she had no income and no accumulated wealth. ***See RL BB***, 754 F.3d at 389.

9. Furthermore, M&T Bank has failed to meet its burden of proving that any of the relevant exceptions to the ECOA apply in this case. ***See*** 12 C.F.R. § 202.7(d)(2)-(4).

10. [Appellee's] guaranty was not necessary to reach any property held jointly by Christopher and [Appellee] in the event of the death of, or default by, Christopher Justofin. 12 C.F.R. § 202.7(d)(2). The only property held jointly by Christopher and [Appellee] was encumbered by a mortgage that [Appellee] executed in favor of M&T Bank.

11. [Appellee's] testimony is credible.

12. [M&T Bank's] action is dismissed, and judgment is entered for [Appellee].

13. Having satisfied the burden of the proof for her ECOA Counterclaim, [Appellee] is entitled to an award of attorney fees.

Trial Court Opinion ("TCO"), 10/17/16, at 1-7.

On October 19, 2016, M&T Bank filed a motion for reconsideration, arguing that the award of attorneys' fees was inappropriate and that non-applicant guarantors are not entitled to the protections of the ECOA. The trial court issued an order on November 21, 2016, striking Conclusion of Law No. 13 with regard to attorneys' fees, and denying M&T Bank's motion with respect to whether a guarantor is entitled to protection under the ECOA. M&T Bank filed a notice of appeal on December 16, 2016, followed by a timely, court-ordered Pa.R.A.P. 1925(b) concise statement of errors

complained of on appeal. M&T Bank now presents the following issue for our review: "Are guarantors who are not loan applicants entitled to the protection of the Equal Credit Opportunity Act?" M&T Bank's Brief at 5.

In a non-jury case such as this, our standard of review is,

> limited to a determination of whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. Findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed on appeal absent error of law or abuse of discretion. When this Court reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected.
>
> *Hart v. Arnold*, 884 A.2d 316, 330-31 (Pa. Super. 2005), *appeal denied*, 587 Pa. 695, 897 A.2d 458 (2006) (citations omitted). "The trial court's findings are especially binding on appeal, where they are based upon the credibility of the witnesses, unless it appears that the court abused its discretion or that the court's findings lack evidentiary support or that the court capriciously disbelieved the evidence." *Id.* (citations omitted). "Conclusions of law, however, are not binding on an appellate court, whose duty it is to determine whether there was a proper application of law to fact by the lower court." *Taliati v. Nationwide Insurance Co.*, 720 A.2d 1051, 1053 (Pa. Super. 1998), *appeal denied*, 559 Pa. 706, 740 A.2d 234 (1999). "With regard to such matters, our scope of review is plenary as it is with any review of questions of law." *Id.*

*Christian v. Yanoviak*, 945 A.2d 220, 224-25 (Pa. Super. 2008).

M&T Bank argues that "the [ECOA] does not apply to non-applicant loan guarantors because[,] by the plain terms of the statute, a guarantor is not an 'applicant' for purposes of the statute." M&T Bank's Brief at 9. Its

argument, however, relies solely on a decision by the 8th Circuit Court of Appeals, *Hawkins v. Community Bank of Raymore*, 761 F.3d 937 (8th Cir. 2014) (concluding that a guarantor is not protected from marital-status discrimination by the ECOA). M&T Bank cites the *Hawkins* opinion at length in support of its position and notes that *Hawkins* was affirmed by an equally divided United States Supreme Court.[2] *See* Appellants' Brief at 10-13. The *Hawkins* decision, however, has no precedential effect on this Court.

It is well-established that this Court is not bound by decisions of federal courts inferior to the United States Supreme Court. *See Schiavone v. Aveta*, 41 A.3d 861, 870 n.4 (Pa. Super. 2012). Moreover, it has long been held that "the legal significance of *per curiam* decisions is limited to setting out the law of the case. Our Supreme Court has made it clear that *per curiam* orders have no *stare decisis* effect." *Commonwealth v. Thompson*, 985 A.2d 928, 937 (Pa. 2009) (citing *Commonwealth v. Tilghman*, 673 A.2d 898, 904 (Pa. 1996) (holding that only if a *per curiam* order expressly affirms on the basis of the lower court opinion does the order have precedential force)).

After careful review, we conclude that the trial court's findings of facts in the instant case are well-supported by the record, and that the trial court

---

[2] The United States Supreme Court issued a *per curiam* opinion stating only: "The judgment is affirmed by an equally divided Court." *See Hawkins v. Community Bank of Raymore*, 136 S.Ct. 1072 (2016).

properly applied the relevant law in this matter. "The ECOA was enacted to ensure fairness in creditors' consideration of credit applications." *Gentile*, 776 A.2d at 281. Accordingly, the ECOA provides that "it shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction[,] on the basis of … marital status[.]" 15 U.S.C. § 1691(a)(1). Federal regulations implementing the ECOA further provide:

> Signature of spouse or other person—
>
> (1)    Rule for qualified applicant. Except as provided in this paragraph, a creditor shall not require the signature of an applicant's spouse or other person, other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested. A creditor shall not deem the submission of a joint financial statement or other evidence of jointly held assets as an application for joint credit.

12 C.F.R. § 202.7(d)(1).

Contrary to M&T Bank's assertions, this Court has expressly held that "[g]uarantors *are* considered 'applicants,' and thus are protected by the ECOA." *Gentile*, 776 A.2d at 282 (emphasis added). "A guarantor may assert an ECOA violation as a defense to a state-court confession of judgment. If the defense is successful, the guarantor's obligation is voided, but the underlying debt and any other guarantees are not voided." *Id.* (citations omitted).

As we have previously explained:

> When determining whether a creditor has violated the ECOA by requiring a spousal signature, it is critical to determine whether the husband and wife were joint applicants on the loan. … [L]enders are permitted to require spousal signatures where the spouses are joint applicants. 12 C.F.R. 202.7(d)(1); ***Midlantic Nat'l Bank v. Hansen***, 48 F.3d 693, 699 (3rd Cir. 1995), *cert. denied*, 515 U.S. 1184, 116 S.Ct. 32, 132 L.Ed.2d 914 (1995). "A joint applicant is 'someone who applies contemporaneously with the applicant for shared or joint credit' and not someone 'whose signature is required by the creditor as a condition for granting the credit requested.'" ***Midlantic***, 48 F.3d at 699, *citing*, Official Staff Interpretation to 12 C.F.R. § 202.7(d)(1)….

***Id.*** at 282. Moreover, "[W]here a married person seeks individual credit and is individually creditworthy, a lender violates the ECOA if it nevertheless enforces a blanket policy to require a spousal signature." ***Id.***

Here, based on the trial court's findings of fact, it is clear that Appellee was not a joint applicant on the loan made by M&T Bank to Christopher Justofin or his corporation. Additionally, the trial court found that Christopher Justofin was independently creditworthy, and that M&T Bank required Appellee to execute a guaranty of the loan solely due to her status as Christopher's spouse. Thus, we agree with the court's conclusion that Appellee is entitled to protection under the ECOA, and we discern no abuse of discretion.

Judgment affirmed.

Judge Ott joins this memorandum.

Judge Strassburger files a concurring memorandum in which Judge Ott joins.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/21/2017