LOU BOTTI CONSTRUCTION,
Appellee,

v.

Romi HARBULAK, Appellant.

Superior Court of Pennsylvania.

Submitted June 5, 2000.

Filed Sept. 29, 2000.

Gary F. Selway, Greensburg, for appellant.

Grey D. Pratt, Pittsburgh, for appellee.

BEFORE: McEWEN, President Judge, DEL SOLE and OLSZEWSI, JJ.

DEL SOLE, J.:

¶ 1 This is a timely appeal by Romi Harbulak ("Appellant"/"Homeowner") of a judgment entered on a nonjury verdict in favor of Appellant, after denial of Appellant's post-trial motions.[1] We affirm.

¶ 2 Appellee ("Contractor") and Homeowner began a social dating relationship that lasted several months. During that relationship, Contractor visited Homeowner's residence on several occasions. On several occasions, the parties discussed improvements to be made to this residence. The dating relationship subsequently ended. Sometime after the dating relationship ended, a storm caused damage to Appellant's residence. There is a dispute as to who contacted whom following the storm. Contractor asserts that Homeowner called him by telephone and he went to her residence. Homeowner testified that the Contractor knocked on her door after the storm and told her that there were shingles lying in her front yard. Subsequently, the parties signed an agreement which provided that the Contractor would replace Homeowner's roof and make other improvements to her home. Appellee visited Appellant's residence on at least one occasion to take measurements and for purposes of estimating the scope and quantity of the work to be done. The parties signed the contract, which identified the work to be performed. The contract did not include a written notice to Homeowner of her alleged right of rescission under § 201–7 of the Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201–1, et seq., ("UTPCPL"). The Contractor proceeded

---

1. Although Appellant improperly appealed to this Court before the verdict was reduced to judgment, this error was corrected by Appellant subsequently entering judgment on the verdict upon our direction.

to make the repairs. Homeowner made interim payments totaling $5,000 towards the contract.

¶ 3 During performance of the work, some water entered the residence. As a result, damage occurred. Several months after the inception of the contract, Appellant attempted to rescind the contract pursuant to the UTPCPL. Contractor filed suit for the remaining money due under the contract. Homeowner filed a counterclaim seeking money damages to repair the alleged damage to her residence.

¶ 4 After a nonjury hearing, the court entered a verdict. On the Contractor's Complaint, the Court found in favor of the Homeowner and against the Contractor. With regard to Homeowner's counterclaim, the court found in favor of the Homeowner in the amount of five thousand eight hundred fifty-six dollars and forty-five cents ($5,856.45) and against the Contractor.

¶ 5 Homeowner subsequently filed Post–Trial Motions alleging that the trial court should have awarded her $10,856.45, the verdict previously entered plus the $5,000.00 which was paid under the contract. See Docket Entry 36. The trial court denied Homeowner's Post–Trial Motion. This timely appeal followed.

¶ 6 On appeal, Appellant argues that the trial court erred in denying the Post–Trial Motion and in holding that the contract at issue did not come within the purview of § 201–7 of the UTPCPL. Section 201–7 provides:

(a) Where goods or services having a sale price of twenty-five dollars ($25) or more are sold or contracted to be sold to a buyer, as a result of, or in connection with, a contact with or call on the buyer or resident at his residence either in person or by telephone, that consumer may avoid the contract or sale by notifying, in writing, the seller within three full business days following the day on which the contract or sale was made and by returning or holding available for return to the seller, in its original condi-

tion, any merchandise received under the contract or sale. Such notice of rescission shall be effective upon depositing the same in the United States mail or upon other service which gives the seller notice of rescission.

(b) At the time of the sale or contract the buyer shall be provided with:

(1) A fully completed receipt or copy of any contract pertaining to such sale, . . . and which shows the date of the transaction and contains the name and address of the seller, and in immediate proximity to the space reserved in the contract for the signature of the buyer or on the front page of the receipt if a contract is not used and in bold face type of a minimum size of ten points, a statement in substantially the following form:

"You, the buyer, may cancel this transaction at any time prior to midnight of the third business day after the date of this transaction. See the attached notice of cancellation form for an explanation of this right."

(2) A completed form in duplicate, captioned "Notice of Cancellation," which shall be attached to the contract or receipt and easily detachable, and which shall contain [information on the right to cancellation] . . . .

. . .

(e) The cancellation period provided for in this section shall not begin to run until buyer has been informed of his right to cancel and has been provided with copies of the "Notice of Cancellation."

. . .

(g) Any valid notice of cancellation by a buyer shall be honored . . .

73 P.S. § 201–7.

¶ 7 Appellant asserts that the contract between the parties comes within the purview of § 201–7 of the UTPCPL and accordingly was required to include the

"Notice of Cancellation." Because the contract did not include the requisite Notice of Cancellation and forms, Homeowner asserts that she had an ongoing right to cancel the contract.

¶ 8 Our scope of review is quite limited in cases in which the verdict of the trial judge is called into question. *Gemini Equipment Co. v. Pennsy Supply, Inc.*, 407 Pa.Super. 404, 595 A.2d 1211, 1214 (1991). We are bound by the findings of the trial court which have adequate support in the record, as long as the findings do not evidence capricious disregard for competent and credible evidence. *Id.*

¶ 9 In a nonjury trial, the trial judge sits as the finder of fact. The weight to be assigned the testimony of the witnesses is within the exclusive province of the factfinder. *Molag, Inc. v. Climax Molybdenum Co.*, 431 Pa.Super. 569, 637 A.2d 322, 324 (1994). The trial court, as sole assessor of credibility, may believe all, part or none of the evidence presented. *Id.* Absent an abuse of discretion we will not disturb a trial court's findings of fact if they are supported by the record. *Commonwealth v. Blystone*, 421 Pa.Super. 167, 617 A.2d 778, 780 (1992).

¶ 10 The trial court made a finding after trial that:

> ... the contract entered into between the plaintiff and defendant that the contract in question was not the result of or in connection with a contact or call on the buyer at her residence, but rather as the result of a prior personal relationship between the buyer and seller....

See docket entry 40.

¶ 11 When presented with a Motion for Summary Judgment earlier in the proceedings, which the court appropriately treated as a Motion for Judgment on the Pleadings, the court denied the Motion filed by Homeowner. In coming to this determination, the court pointed to the Contractor's Reply to New Matter. In Contractor's Reply to New Matter, he denies that he called upon the Homeowner at her residence and denied that the transaction was initially commenced by way of a "cold door to door sales pitch." ¶ 23 of Contractor's Reply to New Matter. The court held that because of this assertion, there was a dispute as to a material fact: whether the agreement was the result of or in connection with contact between the seller and the consumer at the consumer's home. Because there was a material fact in dispute, the trial court appropriately denied the Motion for Judgment on the Pleadings.

¶ 12 After the nonjury trial, the court made the factual determination that the contract entered into was not the result of or in connection with a contact or call on the buyer at her residence, but rather was the result of a prior personal relationship between the buyer and seller. We will not disturb this finding since the record supports it.

¶ 13 In addition, caselaw interpreting this statute supports the trial court's finding. While not binding on this court, the analysis by the court in *In re Saler*, 84 B.R. 45 (Bank.E.D.Pa.1988)is instructive. In *In re Saler*, the court interpreted the UTPCPL and observed that § 201–7 is "... drafted with an eye towards ensnaring the wily seller of goods and services who would try to circumvent the statute by engaging in conduct just beyond its scope, e.g., preceding his home visit with other sorts of communications." *Id.* at 49. The court further stated:

> In interpreting § 201–7, we must recognize that the breadth of its wording is meant to prevent the use of devices to circumvent its underlying intention to provide protection in a broad range of "door-to-door" sales. It is not meant to open up every transaction in which a seller of goods or services has any sort of contact at all with the buyer at his residence to the scope of § 201–7. If we adopted the Debtor's interpretation, ... any home improvement contractor who surveyed the scene of his projected tasks would be within its scope, even if

all of the documentation were honestly and carefully put forth and executed in a setting other than in the customer's home. We do not believe that the legislature could have possibly envisioned such frankly bizarre consequences to flow from the enactment of § 201–7.

*Id.*

¶ 14 The facts of the case *sub judice* are removed from the situation in which goods and services are sold or contracted to be sold door-to-door or as a result of, or in connection with, a call or contact with the buyer at buyer's residence. Accordingly, we find support for the trial court's conclusion that the transaction between the parties is not within the purview of § 201–7.

¶ 15 Order affirmed.