# Emiliani v. Pierre

338

C.P. of Lackawanna County, No. 10 CV 7365.

*Charles F. Wilson,* for plaintiff.
*Edward S. Neyhart,* for defendant.

MINORA, *J.,* November 18, 2011—(1) In a non-jury proceeding, the judge sits as the "finder of fact," and is, therefore, empowered to make any and all credibility determinations. The sitting judge is also empowered to render decisions with respect to the probative value and evidentiary weight of the evidence submitted. *Mill Creek Twp. School District v. County of Erie,* 714 A.2d 1095 (Pa. Cmwlth. 1998); *GAR Memorial Assoc. v. Pritchard,* 101 Lacka. Jurist 111 (1999). The trial judge is free to believe all, some or none of the testimony and/or evidence presented by any witness or party. *Lou Botti Construction v. Harbulak,* 760 A.2d 896 (Pa. Super. 2000). The findings of a trial judge in a non-jury case will be given the same weight and effect as a jury verdict and will not be disturbed absent error of law or abuse of discretion. *Stonehedge Square Ltd. Partnership v. Movie Merchants, Inc.,* 685 A.2d 1019 (Pa. Super. 1996).

(2) Pennsylvania declaratory judgment act found at 42 Pa. C.S.A. section 7532(a) empowers this court, as a court of record, "...to declare rights, status and other legal relations,... The declaration may be either affirmative or negative in form and effect and such declarations shall have the force and effect of a final judgment or decree."

(3) An action for declaratory judgment as equitable in nature, the court once it assumes jurisdiction has the power to render any relief it deems necessary, the declaratory judgment remedy being cumulative and in addition to other available remedies, 42 Pa. C.S.A. 7541(b).

(4) The legal standard for the application of punitive damages requires a finding that defendant's conduct was outrageous. A person's conduct is outrageous when it is malicious, wanton, willful or oppressive or shows reckless indifference to the interests of others, *Jahanshahi v. Centura Development Co.,* 816 A.2d 1179, 1180 (Pa. Super. 2003). We find the defendant's conduct meets and exceeds this legal standard.

## Introduction

This case arises out of a recreational partnership dispute relative to the ownership and control of the Sick Lame and Lazy Fishing Club (hereinafter "SL&L"). Plaintiff is alleging a disputed equity ownership of SL&L which owned a Mallard House trailer situated on a ground lease of rental real estate on the St. Lawrence River in Clayton, New York.

The parties are involved in a dispute over the limits of one partner's authority to act and exercise control over the club's assets noted above, which exist solely for fishing/recreational purposes.

On October 13, 2010, Richard Emiliani (hereinafter "Emiliani" or "plaintiff") filed a writ of summons commencing this lawsuit. A certificate of service indicates that Thomas Pierre (hereinafter "Pierre" or "defendant") was served on October 22, 2010. On January 6, 2011, Emiliani filed his complaint and on February 7, 2011, Pierre filed his answer.

The issues framed by the complaint and answer reveal that Emiliani claims to have purchased an equity interest in SL&L on or about August 3, 1999 from a prior owner named Henry Brown.[1] Emiliani goes on to state that from 1999 to the present he timely paid his annual assessments and was treated by all other members at that time as a full equity partner.

Subsequently, two equity members left the partnership. William Wilson died in the year 2007 and Walter Mackiew resigned. Resultantly, Emiliani and Pierre, surviving members of SL&L, allegedly each became one half equity members in the club with Pierre taking over sole

---

1. Plaintiff's complaint at paragraph 3 notes plaintiff purchased his equity interest in this club from "Stewart" Brown. Defendant's exhibit "A" notes "Henry" Brown as an equity owner. Plaintiff's denial of defendant's New Matter at paragraph 34 notes "Henry" Brown. We shall be guided by the club charter and call him as noted therein "Henry" Brown. This is confirmed at page 5, line 22 of his deposition where he notes his name as Henry Stewart Brown.

administrative responsibility.

Others were later allowed into the club as non-equity members only to control expenses. In 2010, Emiliani paid his check to Pierre who deposited same. Emiliani reserved July 2 through July 10, 2010 and Pierre allegedly agreed.

What brought this litigation to a head was defendant Pierre sought the admission of his son, James Pierre, as an equity member of SL&L. Emiliani objected and defendant Pierre tried to return Emiliani's check which he had previously cashed and deposited. Defendant Pierre also engaged in self-help unilaterally changing the locks on the premises.

Emiliani claims Pierre's actions were willful and wanton and accordingly, he seeks damages reflecting same. At count I, Emiliani seeks declaratory judgment and injunctive relief declaring him a fifty percent (50 percent) equity owner of the club and also enjoining Pierre from barring his equity based use and access to the club's facility.

Count II sounds in trespass for wrongful deprivation and dispossession of Emiliani's ownership rights and deprivation of his use and enjoyment of his property. Count III alternatively pleads conversion from being deprived and dispossessed as noted at Count II. Count IV sounds in breach of contract for Pierre's unilateral and unauthorized dispossession and deprivation contrary to the club's membership agreement.

Defendant Pierre, of course, denies the allegations as

framed in plaintiff's complaint and asserts new matter and affirmative defenses and a counterclaim.

Pierre claims that Emiliani was never voted in as an equity member per the club charter. Emiliani's claim of purchase from a prior owner (Henry Stewart Brown) is contrary to the club's charter and by-laws. The court allegedly lacks subject matter jurisdiction since the assets of the club are in New York State.

Pierre also claims Emiliani's complaint is barred by both the statute of frauds and the doctrine of laches. Further, that plaintiff has also failed to join unnamed indispensable parties therefore further depriving this court of jurisdiction. There is also an unspecified claim that plaintiff has engaged in "multiple activities" causing plaintiff to have unclean hands thereby making plaintiff an unsuitable candidate for the equitable remedies sought.

Finally, Pierre says Emiliani's claim is obdurate, vexatious and meritless, thereby causing Pierre to recover damages for monies expended as a result of this litigation.

The court shall dispose of these dueling claims by virtue of its findings of fact and conclusions of law which are made pursuant to a non-jury trial wherein the parties entered testimony and exhibits in support of their respective positions and subsequent filings.

## Findings of Fact

The findings of fact in this case as determined by the

court are supported by the credible, probative, competent and relevant evidence given weight by this court and established during the non-jury proceedings and the evidentiary submissions of the parties and are accepted as valid and true by this court.

In a non-jury proceeding, the judge sits as the "finder of fact," and is, therefore, empowered to make any and all credibility determinations. The sitting judge is also empowered to render decisions with respect to the probative value and evidentiary weight of the evidence submitted. *Mill Creek Twp. School District v. County of Erie*, 714 A.2d 1095 (Pa. Cmwlth. 1998); *GAR Memorial Assoc. v. Pritchard*, 101 Lacka, Jurist 111 (1999). The trial judge is free to believe all, some or none of the testimony and/or evidence presented by any witness or party. *Lou Botti Construction v. Harbulak*, 760 A.2d 896 (Pa. Super. 2000). The findings of a trial judge in a non-jury case will be given the same weight and effect as a jury verdict and will not be disturbed absent error of law or abuse of discretion. *Stonehedge Square, Ltd. Partnership v. Movie Merchants, Inc.,* 685 A.2d 1019 (Pa. Super. 1996).

1.) On August 3, 1999, Henry Brown sold "my share of the Sick, Lame and Lazy camper" for $500.00 to Richard Emiliani. (See plaintiff exhibit 1).

2.) On or about August of 1999, Charter and By-Laws of the Sick, Lame and Lazy Club were adopted and signed by the six charter members: Walter Mackiew, William Wilson, Thomas Pierre, Henry Stewart Brown, Joseph

Cannevale and William Haggerty. (See plaintiff exhibit 2).

3.) As of 1989, the above SL&L Club gained ownership to a 1986 Mallard trailer serial number 1U82MIR23GAO10812 which was registered in the name of the club and placed on a rental real estate lot on the St. Lawrence River in Clayton, New York.

4.) Originally, William Wilson, one of the charter members of the club was the person primarily responsible for maintaining all club records regarding dues collection and expense payments of the club prior to his death in 2007.

5.) On March 12, 2010, Richard Emiliani made payment to Tom Pierre in the amount of four hundred and sixty ($460) dollars by his check number 1532 and marked in the memo as "trailer dues." (See plaintiff Exhibit 3).

6.) Tom Pierre and Audry Pierre routinely endorsed and deposited Emiliani's check #1532 into an account of theirs on April 8, 2010. (See plaintiff Exhibit 3).

7.) During the time from Brown selling his share of the camper to Emiliani on or about August 3, 1999 up until April 8, 2010, Emiliani was always treated as an equity member of the SL&L Club. (See deposition transcript of Walter Mackiew pg. 7, In. 13 to pg. 8, In. 2).

8.) Subsequently, two SL&L members left the club partnership. William Wilson died in 2007 and Walter Mackiew resigned.

9.) The two parties to this lawsuit resultantly became one-half equity members of the SL&L partnership due to the process of elimination noted at findings of fact number seven (#7) and findings of fact number eight (#8).

10.) Pierre became the partner who took over sole administrative and budget responsibility for SL&L.

11.) In order to control costs, others were allowed into the SL&L but only as non-equity members. No further equity members were admitted into SL&L. (See pg. 13, In. 16-20 of Walter Mackiew's deposition).

12.) When Walter Mackiew left the SL&L Club partnership due to health reasons in early 2010, he was not compensated any money for his interest in the club.

13.) When William Wilson died on or about July 2007, no money was tendered to his estate for his interest in the SL&L Club partnership.

14.) At the time of payment noted at findings of fact number five (#5) and findings of fact number six (#6), plaintiff Emiliani also reserved the week of July 2-8, 2010.

15.) Subsequent to those events, defendant Pierre proposed that his son be made an equity member of the SL&L Club partnership and plaintiff Emiliani rejected this proposal.

16.) Again, when a non-equity member was to be added, defendant Pierre again proposed his son be made

an equity member of the SL&L Club partnership, plaintiff Emiliani again rejected this proposal.

17.) Subsequent to these defendant Pierre proposals being rejected by plaintiff Emiliani, defendant Pierre wrote a check to plaintiff Emiliani for four hundred and sixty ($460) dollars and unilaterally told the plaintiff that he was no longer a member of the SL&L Club partnership.

18.) Defendant Pierre went on to change all the locks on the club's trailer in order to deny plaintiff Emiliani access to same.

19.) As a direct result of defendant Pierre's actions, plaintiff Emiliani had to secure an alternative vacation spot at a cost of four hundred and forty-three ($443.00) dollars.

20.) As a direct result of defendant Pierre's actions, plaintiff Emiliani had to secure legal counsel to assert his claims against defendant Pierre.

Conclusions of Law

1.) Plaintiff Emiliani and defendant Pierre at all relevant times were and remain residents of Lackawanna County, Pennsylvania thereby vesting this court with in personam jurisdiction over both parties in this case.

2.) Per plaintiff's trial brief at pages four (4) and five (5), plaintiff has abandoned pursuit of the counts in his complaint relative to a request for injunction, breach of contract and conversation.

3.) The remaining counts for declaratory judgment confirming plaintiff fifty (50 percent) percent equity ownership in the SL&L Club and damages in trespass remain viable.

4.) Pennsylvania declaratory judgment act found at 42 Pa. C.S.A. section 7532(a) empowers this court, as a court of record, "...to declare rights, status and other legal relations,...The declaration may be either affirmative or negative in form and effect and such declarations shall have the force and effect of a final judgment or decree."

5.) An action for declaratory judgment as equitable in nature, the court once it assumes jurisdiction has the power to render any relief it deems necessary, the declaratory judgment remedy being cumulative and in addition to other available remedies, 42 Pa. C.S.A. 7541(b).

6.) Pursuant to the authority vested in this court by the above referenced declaratory judgment act, this court hereby adjudicates and declares that the plaintiff, Richard Emiliani is a fifty (50 percent) percent equity member and owner of the Sick, Lame & Lazy Fishing Club and all of its assets.

7.) Due to plaintiff Emiliani's fifty (50 %) percent equity membership and ownership noted above, he possesses an ongoing right of general access to the club's trailer and its site wherever located and presently located at French Creek Marina, Clayton, New York. This access is to be limited only by and consistent with past practice. This right of access also includes exclusive access and

possession during pre-determined reserved periods of time. According to past practice, this means plaintiff Emiliani, at a minimum will have the right to exclusive occupation of the club trailer and premises for himself and his invited guests for the first week of July every year.

8.) It is further decreed, the defendant's actions herein constitute a wrongful deprivation and dispossession of the plaintiff's fifty (50 %) percent equity membership and ownership noted above. Plaintiff has been wrongfully deprived of his ownership rights and his use and enjoyment of the club facilities by the willful and intentional and wrongful acts of the defendant, Thomas Pierre.

9.) Plaintiff Emiliani had an actual recognized possessory right and right of access when the defendant wrongfully denied him.

10.) Defendant's unilateral self-help actions in changing the locks on the trailer to deny access to plaintiff exhibits bad faith, recklessness and a wrongful seizure of property which did not exclusively belong to him. Further, defendant, due to prior correspondence from plaintiff's counsel knew the matter was in dispute and yet he proceeded illegally to intentionally harass and annoy the plaintiff motivated by revenge and spite for plaintiff's failure to consent to defendant's son becoming an equity owner.

11.) The legal standard for the application of punitive damages requires a finding that defendant's conduct was outrageous. A person's conduct is outrageous when

it is malicious, wanton, willful or oppressive or shows reckless indifference to the interests of others. *Jahanshahi v. Centura Development Co.*, 816 A.2d 1179, 1180 (Pa. Super. 2003). We find the defendant's conduct meets and exceeds this legal standard.

12.) Accordingly, this court will award the plaintiff attorneys' fees, costs, compensatory damages and punitive damages.

13.) Any and all counter claims, new matter and affirmative defenses made by the defendant, Thomas Pierre against the plaintiff Richard Emiliani are hereby denied and dismissed as unsupported by any evidence which the court determined to be credible or probative. The defendant's testimony and that of his witnesses lacks credibility, persuasiveness and is not in any way compelling to this court as the finder of fact. Therefore, the defendant's counter claims, new matter and affirmative defenses are rejected, denied and dismissed in their entirety.

14.) Accordingly, the following damages are adjudicated as due and owing by the defendant Thomas Pierre to the plaintiff Richard Emiliani:

| | |
|---|---|
| 2010 Lost Use Rental Cost | $ 443.00 |
| Plaintiff's Loss of Use | $1,772.00 |
| Plaintiff's Legal Costs | $ 522.95 |
| Total Compensatory Damages: | $2,737.95 |

Punitive Damages awarded by the
court to punish defendant's outrageous
conduct and to defer future misconduct      $5,475.90

Total award due to plaintiff
from defendant:                             $8,213.85
An appropriate order follows.

## ORDER

And now to wit, this day of November 18, 2011, upon consideration of the credible, probative, competent and relevant evidence given weight by this court during the non-jury proceedings as referenced in the accompanying opinion and also upon consideration of all the submissions made by the parties, both those of an evidentiary nature and those which qualify as pleadings, it is hereby ordered and decreed that a verdict is rendered in favor of the plaintiff Richard Emiliani and against the defendant, Thomas Pierre as follows:

1.) It is hereby declared and adjudicated that plaintiff Richard Emiliani is a fifty (50%) percent equity member and owner of the Sick, Lame & Lazy Fishing Club and all of its assets.

2.) Due to plaintiff Emiliani's fifty (50%) percent equity membership and ownership noted above, he possesses an ongoing right to general access to the Club's trailer and its site wherever located and presently located at

French Creek Marina, Clayton, New York. This access is to be limited only by and consistent with practice. This right of access also includes exclusive access and possession during pre-determined reserved periods of time. According to past practice, this means plaintiff Emiliani, at a minimum will have the right to exclusive occupation of the club trailer and premises for himself and his invited guests for the first week of July every year.

3.) It is further decreed, the defendant's actions herein constitute a wrongful deprivation and dispossession of the plaintiff's fifty (50%) percent equity membership and ownership noted above, plaintiff has been wrongfully deprived of his ownership rights and his use and enjoyment of the club facilities by the willful and intentional and wrongful acts of the defendant, Thomas Pierre.

4.) The legal standard for the application of punitive damages requires a finding that defendant's conduct was outrageous. A person's conduct is outrageous when it is malicious, wanton, willful or oppressive or shows reckless indifference to the interests of others. *Jabansbahi v. Centura Development Co.,* 816 A.2d 1179, 1180 (Pa. Super. 2003). We find the defendant's conduct meets and exceeds this legal standard.

5.) Any and all counter claims, new matter and affirmative defenses made by the defendant, Thomas

Pierre against the plaintiff Richard Emiliani are hereby denied and dismissed as unsupported by any evidence which the court determined to be credible or probative. The defendant's testimony and that of his witnesses lacks credibility, persuasiveness and is not in any way compelling to this court as the finder of fact. Therefore, the defendant's counter claims, new matter and affirmative defenses are rejected, denied and dismissed in their entirety.

6.) Accordingly, the following damages are adjudicated as due and owing by the defendant Thomas Pierre to the plaintiff Richard Emiliani:

| | |
|---|---|
| 2010 lost use rental cost | $   443.00 |
| Plaintiff's loss of use | $1,772.00 |
| Plaintiff's legal costs | $   522.95 |
| Total compensatory damages: | $2,737.95 |
| Punitive damages awarded by the court to punish defendant's outrageous conduct and to defer future misconduct | $5,475.90 |
| Total award due to plaintiff from defendant: | $8,213.85 |