J-A17004-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ZELNICK, MANN AND WINIKUR, P.C., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID WARNER, ALAN STEINBERG, | : | No. 1789 EDA 2020 |
| RICHARD SCHEINOFF, AND SWS | : | |
| GROUP,P.C. | : | |

Appeal from the Judgment Entered September 2, 2020
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  No. 2017-04312

| | | |
|---|---|---|
| ZELNICK, MANN AND WINIKUR, P.C., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID WARNER, ALAN STEINBERG, | : | No. 1790 EDA 2020 |
| RICHARD SCHEINOFF, AND SWS | : | |
| GROUP,P.C. | : | |

Appeal from the Judgment Entered September 10, 2020
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  No. 2017-04312

| | | |
|---|---|---|
| ZELNICK, MANN AND WINIKUR, P.C., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID WARNER, ALAN STEINBERG, | : | No. 1791 EDA 2020 |
| RICHARD SCHEINOFF, AND SWS | : | |
| GROUP,P.C. | : | |

Appeal from the Judgment Entered September 10, 2020
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  No. 2017-04312

| | | |
|---|---|---|
| ZELNICK, MANN AND WINIKUR, P.C., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| DAVID WARNER, ALAN STEINBERG, | : | No. 1792 EDA 2020 |
| RICHARD SCHEINOFF, AND SWS | : | |
| GROUP,P.C. | : | |

Appeal from the Judgment Entered September 10, 2020
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  No. 2017-04312

BEFORE:   McLAUGHLIN, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:                     **FILED DECEMBER 8, 2021**

Appellant Zelnick, Mann and Winikur, P.C. ("ZMW"), an accounting firm, brought this civil lawsuit against three accountants formerly employed by ZMW – Appellees David Warner, Alan Steinberg, and Richard Scheinoff (collectively, "Individual Appellees") – who left ZMW and formed their own accounting firm, SWS Group, P.C. ("SWS"). After a seven-day bench trial, the court ruled in favor of Individual Appellees and SWS, finding that ZMW failed to prove damages. We affirm.

The following factual recitation is from the trial court's findings of fact. ZMW is an accounting firm that has been in business for over 20 years. Michael

_____

[*] Retired Senior Judge assigned to the Superior Court.

- 2 -

Mann and Alan Winikur, both certified public accountants, formed ZMW following the death of the founder of a prior firm, Zelnick & Associates, in 1995. Warner began working at Zelnick & Associates in 1990 and became an employee of ZMW after its founding.

Warner entered into a written employment agreement with ZMW in 1996, in which he agreed to keep ZMW's customers and business affairs confidential. The agreement also included confidentiality and non-solicitation provisions lasting two years after termination of his employment. However, it contained a handwritten provision, that both Mann and Warner initialed, stating, "It is agreed and understood that any clients directly originated by David Warner of which full commissions are being paid will be considered proprietary to David Warner upon his employment termination." Trial Ex. P-2.

In 2000, Warner became a shareholder of ZMW when Mann and Winikur each granted him a 2.5% interest in ZMW. Warner purchased additional shares in ZMW from Mann and Winikur throughout the years, and as of the trial court's decision, he was a 17% shareholder in ZMW. Mann and Winikur each retained a 41.5% interest.

Scheinoff started working at ZMW in 2001. When he joined ZMW, Scheinoff brought with him nearly all of his clients for which he had primary responsibility for at his former accounting firm. Scheinoff did not have a written employment agreement with ZMW.

Steinberg started working at ZMW in 2011. Like Scheinoff, when he joined ZMW, Steinberg brought with him practically all of his clients for which

he had primary responsibility at his previous accounting firm. Steinberg had a written employment agreement with ZMW that contained the same confidentiality and non-solicitation provisions as Warner's employment agreement, except there was no handwritten addendum in Steinberg's employment agreement. None of the Individual Appellees had a non-compete agreement with ZMW.

While at ZMW, the five principal accountants – Mann, Winikur, Warner, Scheinoff, and Steinberg – each had his own set of clients with whom he had developed close professional and personal relationships over the years. Most of the clients were long-term clients and had the personal cell phone number of their respective accountant. Such clients generally had no professional or personal relationships with the other accountants at ZMW.

All tax returns, client documents, accountant workpapers, and related data at ZMW were stored in "cloud" accounting software provided by Thomas Reuters. All accountants at ZMW were authorized users on ZMW's Thomas Reuters account and had access to such data.

In the summer 2016, Individual Appellees began exploring the possibility of leaving ZMW and starting their own firm. They thereafter purchased computer equipment, leased new office space, and filed corporate documents for the formation of their new firm, SWS. They did so without informing Mann or Winikur.

In December 2016, Individual Appellees copied electronic client data files by backing up the files through ZMW's Thomson Reuters account onto

flash drives or disks. These files included client documents, tax returns, and accountant workpapers prepared by Individual Appellees. The client files were then put into the new SWS account at Thomson Reuters, which allowed Individual Appellees to access the client files. The client files backed up by Individual Appellees were the files of clients for which they had primary responsibility at ZMW. However, because some of Mann and Winikur's client documents were misfiled under Individual Appellees' client files, the backups included a small number of files of clients serviced primarily by Mann or Winikur. Individual Appellees have insisted that any copying of Mann and Winikur's client files was inadvertent and in error, and they made no use of any such information after they left ZMW. The copying of the client files was done without any advance authorization by the clients.

On January 11, 2017, Individual Appellees submitted resignation letters to ZMW, stating that their resignations would be effective that day at 10:00 a.m. After 10:00 a.m., an email "blast" announcing their departure from ZMW (the "Announcement") was sent to the clients for which Individual Appellees had primary responsibility. The Announcement from Warner stated:

> I am pleased to announce that effective January 11, 2017, at 10:01AM, I have left Zelnick, Mann and Winikur, P.C. and have formed a new accounting firm, SWS Group, P.C. I am excited to join my colleagues Richard Scheinoff, CPA and Alan Steinberg, CPA, whom I have worked with for many years, in this new company. We bring diverse qualifications and many years of experience to this venture as Certified Public Accountants and Business Advisors. Should you have any questions or wish to contact me, I can be reached at this email address or at the following address: . . . .

The Announcements from Scheinoff and Steinberg were the same, except for the individual names. The Announcement was the first contact that Individual Appellees had with any clients about leaving ZMW and starting SWS. Subsequently, nearly all of Individual Appellees' clients notified them that they wanted to continue their professional relationships with them and followed them to SWS. Whenever clients notified one of the Individual Appellees that they wanted them to remain their accountant, the Individual Appellees would send the client an Authorization to Release Information form, addressed to ZMW, to be signed and returned to SWS. Nearly all such clients signed and returned the authorization form to SWS. ZMW did not contact any such clients at any point to request them to stay at ZMW. After Individual Appellees' departure from ZMW, five other ZMW employees left ZMW and began working for SWS.

ZMW commenced this action in March 2017 and filed a 12-count complaint asserting, among other things, claims of breach of contract, conversion, breach of fiduciary duties, misappropriation of trade secrets, and tortious interference. It also sought indemnification and a permanent injunction.

Following a bench trial in November 2019, the court rendered a decision in favor of Individual Appellees and SWS. It found that ZMW "failed to prove any quantifiable measure of damages to support a recovery on any of its causes of action." Trial Court Decision, 6/1/20, Conclusions of Law at ¶ 1.

Following the denial of post-trial motions and the entry of judgment, this timely appeal followed.

ZMW raises two questions for our review:

1. . . . Did the trial court err in finding, without applying the correct legal standards of causation, that Individual Appellees' conduct was not a cause of any of ZMW's claimed damages?

2. Relatedly, did the trial court err by rejecting all of ZMW's causes of action based upon its conclusion that ZMW failed "to prove any quantifiable measure of damages," despite substantial lay, expert and documentary evidence from Individual Appellees' own files that established a reasonable basis for assessing ZMW's claimed damages with at least a fair degree of probability? Stated alternatively, did the trial court use the wrong legal standard in evaluating ZMW's proof of damages?

ZMW's Br. at 5.

Our standard of review in a non-jury trial is well established:

We must determine whether the findings of the trial court are supported by competent evidence and whether the trial judge committed error in the application of law. Additionally, findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed absent error of law or abuse of discretion.

***Davis ex rel. Davis v. Gov't Employees Ins. Co.***, 775 A.2d 871, 873 (Pa.Super. 2001) (citations omitted). Our scope of review of questions of law is plenary. ***Century Indem. Co. v. OneBeacon Ins. Co.***, 173 A.3d 784, 802 (Pa.Super. 2017) (citations omitted).

ZMW argues that the court erred by failing to recognize any causal connection between Individual Appellees' conduct and ZMW's damages. ZMW's Br. at 36. ZMW contends that if Individual Appellees did not secretly copy the client files, they "would have been unable to service the ZMW clients they expected to constitute SWS's clientele upon opening their doors for business on January 11, 2017 – *i.e.*, at the beginning of SWS's first, and critically important, 'tax season.'" *Id.* ZMW maintains that had Individual Appellees "gone through proper channels, it would have taken SWS months to obtain the clients' files (assuming those clients with outstanding [accounts receivable] balances paid them) and input all of the information into SWS's computer system in usable form." *Id.* ZMW also argues that it was deprived of leverage to collect payment of outstanding accounts receivable balances because Individual Appellees took client workpapers without those clients paying their balances.[1] *Id.* at 37.

ZMW further contends that it "presented more than sufficient evidence that it [was] more likely than not ZMW would have retained a significant percentage, if not all, of the clients' business for at least that first tax season" after Individual Appellees left had they not engaged in misconduct. *Id.* at 48. ZMW argues damages need not be proved by mathematical certainty and its expert sufficiently quantified ZMW's damages of (1) lost profits, (2) loss of

---

[1] The Association of International Certified Professional Accountants Code of Conduct permits an accountant whose client requests to transfer to another firm to withhold that client's workpapers until the client pays its outstanding fees owed to that firm.

accounts receivable, and (3) extra expenses it incurred as a result of Individual Appellees' actions. *Id.* at 35, 54. According to ZMW, the trial court erroneously held it "to an incorrect standard of proof that it could not possibly satisfy – essentially, to identify which clients would have stayed with ZMW and for how long they would have stayed absent [Individual Appellees'] data heist and solicitation." *Id.* at 59. ZMW contends that it was only required to provide the court with sufficient information to fairly estimate its damages. *Id.*

The trial court found no causal nexus was shown between the copying of the client files and the loss of any client by ZMW. Trial Ct. Decision, Finding of Fact at ¶ 63. The court asserted that the clients who followed Individual Appellees did so because of their close professional and personal relationships with them. *Id.* at ¶ 62. The court observed that there was no evidence that such clients were aware at the time of their decision to leave ZMW that SWS already had copies of their files from ZMW. *Id.* at ¶ 63.

The court further found that ZMW failed to sufficiently prove damages that it incurred as a result of Individual Appellees' actions. As to lost profits, the court concluded that ZMW's expert on damages, James Stavros, based his calculations on an assumption that was wholly unsupported by the evidence presented at trial – namely, that but for Individual Appellees' conduct in copying clients' files and allegedly soliciting clients' business, *all* of the clients would have stayed with ZMW instead of following their accountants to SWS. *Id.* at ¶ 72. To the contrary, the court found that there was overwhelming evidence presented that virtually all of the Individual Appellees' clients would

have moved their business to SWS even in the absence of Individual Appellees' copying of files or sending out the Announcement. Pa.R.A.P. 1925(a) Opinion, 11/16/20, at 5-6. Indeed, the court found that the clients' decisions to move to SWS were driven by their ongoing personal relationships with Individual Appellees and not with the ZMW firm. *Id.* at 7. The court opined that "[e]ven if the copying of files and the sending of the Announcement could have had *some* impact on the decisions of the clients to continue with Individual [Appellees], ZMW failed to present any persuasive evidence of the *quantity* of business or profits lost as a result of such conduct." *Id.* at 9 (emphasis in original). The court emphasized that the problem with Stavros' calculations was not a lack of precision, but rather a lack of any evidentiary basis for his primary assumption that but for Individual Appellees' actions, 100% of the clients would have stayed with ZMW instead of following their personal accountants to SWS. *Id.* at 10-11 n.8.

As to accounts receivable loss, the court recognized that ZMW likely incurred some loss in the collection of outstanding accounts receivable as a result of Individual Appellees' conduct because by copying the clients' workpapers, ZMW could not exercise its right to withhold such papers to collect the unpaid fees. *Id.* at 11. However, once again, the court found that ZMW failed to present any persuasive estimate of the amount of the loss. *Id.* The court observed that Stavros' calculation was based on an unsupportable assumption — that all of ZMW's outstanding receivables due from clients serviced by Individual Appellees were uncollectable because of Individual

Appellees' copying of the client files. *Id.* at 11-12. The court stated that "[w]hile ZMW's loss of leverage may have resulted in its ability to collect *some* of the receivables, Mr. Stavros' assumption that *all* of the receivables were uncollectable because of the copying of files lack[ed] any evidentiary basis." *Id.* at 12 (emphasis in original). It noted that Stavros presented a list of 60 clients who had failed to fully pay fees owed to ZMW after Individual Appellees' departure. *Id.* Of those clients, one client was serviced by Warner, 15 clients were serviced by Scheinoff, and 44 clients were serviced by Steinberg. *Id.* Some clients on the list had not made payments to ZMW for years prior to Individual Appellees' departure. *Id.* at 13. The court also observed there was extensive evidence presented that Steinberg, while at ZMW, was consistently late in billing his clients and had a backlog of client billing by months or even years. *Id.* The court found that Stavros did not explain how receivables that had gone uncollected for years before Individual Appellees' departure would suddenly have become collectable if Individual Appellees had not copied the workpapers for those clients. *Id.*

As to extra legal expenses allegedly incurred by ZMW as a result of Individual Appellees' conduct, the court found that, again, ZMW failed to prove the amount of the extra expenses. Stavros testified that ZMW's extra expenses consisted of legal fees from three different lawyers/law firms. First, Stavros testified that the Schoenberg Law Office ("Schoenberg") provided legal services to ZMW dealing with the "data breach" issue. As to the Schoenberg legal fees, the court concluded:

> According to Mr. Stavros, someone on behalf of ZMW, either a principal or counsel, reviewed Schoenberg's invoices, redacted line items that were purportedly unrelated to the data breach issue, and circled the items that were purportedly related to the data breach issue. No evidence was provided on who performed this task or how he went about doing it. Further, Mr. Stavros made no independent judgment on which items were redacted and which were circled. His role was limited to adding up the dollar amounts of the circled items, which totaled $10,535. (Tr. 11/19/19, Stavros, at 112-14.) The invoices themselves were not presented to the [c]ourt or offered in evidence. This evidence was clearly insufficient to support a damage award. Mr. Stavros exercised no expertise regarding this item but simply added up numbers that were provided to him by some unknown redactor. The absence from the record of Schoenberg's invoices merely reinforces the inadequacy of ZMW's evidence.

*Id.* at 15.

Second, Stavros testified that Steven G. Sklar, Esq. provided legal services to ZMW in attempting to collect accounts receivable. The court found insufficient evidence to grant ZMW recovery of Sklar's fees:

> Once again, the invoices were not presented to the [c]ourt or offered in evidence. Further, as with the absence of proof on ZMW's claim of lost accounts receivable, there was no showing that the accounts that Mr. Sklar attempted to collect were made uncollectable or difficult to collect as the result of the copying of files or other purportedly wrongful conduct by Individual [Appellees]. Mr. Stavros confirmed that Mr. Sklar's fees for account collection were included "regardless as to whether this was a 2011, '12, '13, '14, '15, or '16 account receivable." (Tr. 11/[19]/19, Stavros, at 111.)

*Id.* at 16.

Third, Stavros included in his list of extra expenses fees in the amount of $6,926 billed by the Braverman Kaskey law firm. Braverman Kaskey represented ZMW throughout most of the present lawsuit. The court again found a lack of adequate proof of these damages, noting that although these fees were listed in Stavros' exhibit of extra expenses, he was not asked about them on direct examination and no invoices were presented to the court. *Id.*

"The determination of damages is within the trial court's exclusive authority as fact-finder to weigh and assess the credibility of the evidence." *Snyder v. Crusader Servicing Corp.*, 231 A.3d 20, 32 (Pa.Super. 2020) (citing *Boehm v. Riversource Life Ins. Co.*, 117 A.3d 308, 328 (Pa.Super. 2015); *Lou Botti Constr. v. Harbulak*, 760 A.2d 896, 898 (Pa.Super. 2000)). Damages may not "be awarded where the evidence is insufficient for the finder of fact to determine what, if any amount, of damages the plaintiff suffered." *Id.* Although we do not require mathematical exactness, the law "does not permit a damages award to be based on mere guesswork or speculation, but rather requires a reasonable basis to support such an award." *Helpin v. Trs. of Univ. of Pa.*, 10 A.3d 267, 270 (Pa. 2010) (citations omitted).

Further, the law provides that

> expert testimony is incompetent if it lacks an adequate basis in fact. While an expert's opinion need not be based on absolute certainty, an opinion based on mere possibilities is not competent evidence. This means that expert testimony cannot be based solely upon conjecture or surmise. Rather, an expert's assumptions must be based upon such facts as the jury would be warranted in finding from the evidence.

***Gillingham v. Consol Energy, Inc.***, 51 A.3d 841, 849 (Pa.Super. 2012)
(citation omitted).

The trial court's findings are supported by competent evidence and the court did not err in its application of the law. Our review shows that ZMW did not meet its burden in proving damages or showing a causal nexus between the copying of the client files and the loss of any client by ZMW. The record supports the trial court's finding that although the availability of client files to SWS at the start of its operations may have given SWS a two-month "jump start" in servicing those clients, there was no evidence that this jump start was the reason that those clients went to SWS, nor that ZMW suffered any damages as a result of this jump start.[2] To the contrary, the record was replete with evidence that those clients followed Individual Appellees to SWS because of their long-standing personal and professional relationships with those accountants.[3]

---

[2] Indeed, on cross-examination, Stavros admitted that he did not calculate the amount of profit that SWS was able to obtain as a result of a jump start in getting the client documents, nor was he asked to calculate those alleged damages. N.T., 11/19/19, at 58.

[3] SWS presented the testimony of several former ZMW clients (now current SWS clients) who testified unequivocally that they went to SWS because of their personal relationships with their individual accountants and not because of any alleged solicitation or advanced copying of client files. ***See*** N.T., 11/20/19, at 245-52, 257; N.T., 11/21/19, at 9-12, 17-18, 20-22, 215-18. They testified that they were unaware that their files were copied, and the copying of their files did not influence their decision to follow their accountants to SWS. N.T., 11/20/19, 258-59; N.T., 11/21/19, at 20-22, 217. ZMW takes issue with the fact that Individual Appellees only had a small number of clients
*(Footnote Continued Next Page)*

Most significantly, the court properly determined that ZMW's expert's primary assumption of his calculation for damages – that but for Individual Appellees' actions, all of the clients would have stayed with ZMW and all of the outstanding accounts receivable from clients serviced by Individual Appellees would have been collectable – had no evidentiary basis. The court concluded that this assumption, essential to the expert's opinions, was not supported by the record. After review, we find that the expert testimony proffered by ZMW lacked an adequate factual basis for his conclusions. The expert repeatedly testified that his damages calculation was based on this assumption,[4] which had no basis in fact. Although an expert may properly rely on assumptions in forming their opinion, the assumptions "must be based upon such facts as the jury would be warranted in finding from the evidence." *Gillingham*, 51 A.3d at 849 (citation omitted).

Lastly, the record reflects that ZMW presented inadequate evidence in support of its legal expense damages claim. Thus, the court did not err in finding that ZMW failed to meet its burden of proof.

Judgment affirmed.

---

testify about their close relationships with them. ZMW's Br. at 58. However, the court stated that it would not have allowed any more clients to testify, if SWS offered to do so, because any further testimony would have been redundant and unnecessarily cumulative. Trial Ct. Op. at 18. We agree. In any event, ZMW had the burden of proof and did not present any evidence that even one client would have stayed at ZMW but for Individual Appellees' actions.

[4] *See* N.T., 11/19/19, at 47, 50-52, 59, 64-65, 127.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/08/2021</u>