# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania
by the Department of Community
and Economic Development,
Appellant

v.

Michael Jay Buhler and Jefferey
Otto Buhler, Executors of the Estate
of Margaret A. Buhler, Deceased and
Jefferey Buhler and Michael Buhler,
Executors of the Estate of
John Buhler, Deceased

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

No. 1322 C.D. 2018
Argued: May 6, 2019

BEFORE: HONORABLE P. KEVIN BROBSON, Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE MICHAEL H. WOJCIK, Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**          **FILED: July 10, 2019**

The Commonwealth of Pennsylvania (Commonwealth) by the Department of Community and Economic Development (Department) appeals from an order of the Court of Common Pleas for the 59th Judicial District, Elk County Branch (trial court), dated July 17, 2018, which granted in part and denied in part the motion for summary judgment filed by Michael Jay Buhler and Jefferey Otto Buhler, Executors of the Estate of Margaret A. Buhler, Deceased (Margaret Buhler's

Estate),[1] denied the Department's motion for partial summary judgment, and dismissed the Department's amended complaint in confession of judgment (Amended Complaint) with prejudice. The only issues before this Court are whether the trial court committed an error of law by dismissing the Department's Amended Complaint, thereby effectively striking off a confessed judgment in favor of the Department on two grounds: (1) the Department's failure to properly join John Buhler's Estate as an indispensable party; and (2) the Department's requirement that Margaret Buhler sign a Guaranty and Surety Agreement (Guaranty) in violation of Section 1691 of the Equal Credit Opportunity Act (ECOA).[2] We now reverse.

This matter involves a loan from the Machinery and Equipment Loan Fund (Loan) that the Department furnished to Tire Visions, Inc., formerly known as Allegheny Environmental Solutions, Inc. (AES). (Reproduced Record (R.R.) at 11a-18a.) In connection with the Loan, AES executed a Note dated May 17, 2001, in favor of the Department,[3] which was signed by Douglas M. Depp, AES's president. (*Id*. at 11a-13a.) As a condition of the Loan, the Department required

---

[1] While Margaret Buhler's Estate and Jefferey Buhler and Michael Buhler, Executors of the Estate of John Buhler, Deceased (John Buhler's Estate) (collectively, Appellees) are both parties to this appeal, it appears from the record that the motion for summary judgment was filed solely by Margaret Buhler, who was alive and was a party to the action at the time the motion for summary judgment was filed. Upon her passing, the trial court substituted Margaret Buhler's Estate as a party for Margaret Buhler by order dated May 5, 2018. (Original Record (O.R.), Item No. 51.)

[2] 15 U.S.C. § 1691.

[3] The Note was executed in favor of the Commonwealth, however, the Commonwealth acted through the Department with respect to the Loan. We will, therefore, refer to the Department, and not the Commonwealth, as the holder of the Note.

John and Margaret Buhler, then husband and wife,[4] to execute a Guaranty, specifically guaranteeing AES's payment of the Note. (*Id*. at 14a-18a.)

By letter dated April 16, 2012, the Department notified Margaret Buhler that AES had defaulted on the Loan. (*Id*. at 65a.) In the same letter, the Department warned Margaret Buhler that if the outstanding balance was not paid within 30 days of the date of the letter, the Department may pursue several remedies, including entering judgment against Margaret Buhler as a personal guarantor of the Loan. (*Id.* at 66a.) Thereafter, on February 4, 2013, the Department filed a complaint in confession of judgment (Complaint)[5] against Margaret Buhler pursuant to the terms and conditions of the Guaranty. (*Id*. at 7a-9a.) On that same date, the Elk County Prothonotary (Prothonotary) entered judgment against Margaret Buhler in the amount of $329,052.18, plus post-judgment interest in accordance with Pennsylvania Rule of Civil Procedure 2956.[6] (*Id.* at 30a.)

On June 27, 2013, Margaret Buhler filed a petition to strike off and/or open confessed judgment (First Petition), alleging that the confessed judgment should be stricken or opened.[7] The trial court conducted a hearing on the First

---

[4] John Buhler passed away on January 19, 2002. (R.R. at 194a.) Margaret Buhler passed away on February 4, 2018. (O.R., Item No. 47.)

[5] Confessions of judgment for money are governed by Rules 2950 through 2967 of the Pennsylvania Rules of Civil Procedure.

[6] Pennsylvania Rule of Civil Procedure 2956 provides: "The prothonotary shall enter judgment in conformity with the confession."

[7] Pursuant to Pennsylvania Rule of Civil Procedure 2959(a)(1), "[r]elief from a judgment by confession shall be sought by petition." A court's decision to grant a petition to open puts a confessed judgment in dispute. Pa. R.C.P. No. 2959. By contrast, a court's decision to grant a petition to strike off the confessed judgment "annuls the original judgment and the parties are left as if no judgment had been entered." *Resolution Trust Corp. v. Copley Qu-Wayne Assocs.*, 683 A.2d 269, 273 (Pa. 1996) (citing Pa. R.C.P. 2959 cmt.).

3

Petition on January 8, 2014. (O.R., Item No. 9; R.R. at 104a.) At the hearing, the trial court judge stated: "The [trial c]ourt believes [John Buhler] is an indispensable party and will direct the [Department] to file an amended complaint to join his Estate." (R.R. at 110a.) By order dated March 5, 2014, the trial court denied the petition to strike, granted the petition to open, and directed the Department to amend its Complaint to join John Buhler's Estate as an indispensable party.[8] (*Id.* at 132a.) On March 26, 2014, the Department filed its Amended Complaint adding John Buhler's Estate as a party to the action. (*Id.* at 136a-63a.) On that same date, the Prothonotary entered judgment in favor of the Department and against Margaret Buhler and John Buhler's Estate in the amount of $329,052.18, plus post-judgment interest. (*Id.* at 164a, 173a.)

Subsequently, on April 4, 2014, Margaret Buhler filed a petition to strike off and/or open the amended confessed judgment (Second Petition). (*Id*. at 174a.) In her Second Petition, Margaret Buhler set forth the following arguments: (1) the Department did not provide her with 30 days' written notice prior to the entry of the confessed judgment as required by the Guaranty; (2) the Guaranty was entered into in contemplation of the Loan to AES, a company to which Margaret Buhler had no business ties; (3) the Department required Margaret Buhler to sign the Guaranty because of her status as John Buhler's wife, and not because John Buhler was uncreditworthy or because Margaret Buhler was a joint applicant, which is in contravention of the ECOA;[9] (4) the Guaranty defined John and Margaret

---

[8] The trial court's initial order, issued on January 8, 2014, granted both the petition to strike and the petition to open. (R.R. at 102a.) On that same date, however, the trial court issued an amended order, granting only the petition to open. (*Id*. at 103a.) Thereafter, on March 5, 2014, the trial court issued a second amended order, specifically directing the Department to amend its Complaint to add John Buhler's Estate as an indispensable party. (*Id*. at 132a.)

[9] 15 U.S.C. § 1691-1691f.

4

Buhler collectively, as "Guarantor," thereby imposing joint liability and making John Buhler's Estate an indispensable party to the action; (5) if Margaret Buhler was to be found liable for repayment under the Guaranty, her liability would transfer to John Buhler, because he owed her a fiduciary duty as a result of the confidential relationship that Margaret Buhler had with John Buhler concerning all business decisions; and (6) the amended confessed judgment should be stricken for lack of jurisdiction because John Buhler's Estate had not been properly joined as a party to the action. (*Id*. at 174a-81a.)

The trial court issued a rule to show cause in the form of an order staying the proceedings pursuant to Pennsylvania Rule of Civil Procedure 2959(b);[10] as part of the rule to show cause, the trial court also scheduled a hearing on the Second Petition and required the Department to file a responsive pleading to the Second Petition.[11] (O.R., Item No. 23.) The Department filed an answer to the Second Petition pursuant to Pennsylvania Rule of Civil Procedure 2959(b). (R.R. at 183a-214a.) By order dated June 10, 2014, the trial court denied the petition to strike but granted the petition to open, stating, in relevant part:

> The petition to open the amended judgment [by confession] is granted notwithstanding that the judgment by confession entered . . . against [] Margaret Buhler on February 4, 2013, was opened by virtue of the January 8, 2014 and March 5, 2014 [orders] entered in this matter. The grant of the pending petition to open is a ratification of the prior orders directing that the judgment

---

[10] Pennsylvania Rule of Civil Procedure 2959(b) provides, in relevant part: "If the petition states prima facie grounds for relief the court shall issue a rule to show cause and may grant a stay of proceedings."

[11] The trial court's order does not strictly comply with the form required by Pennsylvania Rule of Civil Procedure 206.5 and Elk County Local Rule L206.4(c). Based on the language used in the trial court's order, however, it appears that the trial court intended the order to act as a rule to show cause.

> be opened, but expands the opening of the judgment given that [the] March 26, 2014 judgment includes [John Buhler's Estate] . . . as well as [] Margaret Buhler.

(*Id.* at 222a.)

Thereafter, on November 30, 2017, the Department filed a motion for partial summary judgment with respect to all of the defenses raised by Margaret Buhler in her First and Second Petitions, except for the ECOA defense, explicitly conceding that issues of material fact remained concerning the ECOA defense.[12] (*Id.* at 531a-49a.) On that same date, Margaret Buhler filed a motion for summary judgment, arguing, *inter alia*, that the trial court lacked jurisdiction because the Department failed to properly join John Buhler's Estate as an indispensable party to the action—*i.e.*, there is no indication in the record that John Buhler's Estate was served with the Amended Complaint—and that the Department violated the ECOA by requiring Margaret Buhler to execute the Guaranty based solely on her status as John Buhler's wife. (*Id.* at 550a-56a.) Given that the trial court opened the confessed judgment, the issues to be decided on summary judgment or at a subsequent trial "shall be defined by the complaint . . . and by the petition, answer[,] and the order of the court opening the judgment." Pa. R.C.P. No. 2960. The trial court heard argument on the Department's motion for partial summary judgment and Margaret Buhler's motion for summary judgment on May 23, 2018. (O.R., Item No. 49.) By opinion and order dated July 17, 2018, the trial court denied the Department's motion for partial summary judgment, granted in part and denied in

---

[12] On that same date, the Department also filed a motion to discontinue against John Buhler's Estate, alleging that: (1) under Pennsylvania law, warrants of attorney are revoked upon the death of the obligor, and, therefore, the Department should not be permitted to confess judgment against John Buhler's Estate; (2) John Buhler's Estate is not an indispensable party to the action; (3) the Guaranty imparts joint and several liability; and (4) judgment against Margaret Buhler, solely, was proper. (R.R. at 522a-25a.) By order dated May 23, 2018, the trial court denied the Department's motion to discontinue as to John Buhler's Estate. (O.R., Item No. 52.)

part Margaret Buhler's motion for summary judgment, and dismissed the Department's Amended Complaint with prejudice, thereby effectively striking off the confessed judgment entered against Margaret Buhler's Estate and John Buhler's Estate. (R.R. at 732a.) In reaching its decision, the trial court concluded, in relevant part: (1) the trial court lacked jurisdiction to consider the matter because John Buhler's Estate is an indispensable party and had not been properly joined to the action; and (2) the Department violated the ECOA by requiring Margaret Buhler to sign the Guaranty solely due to her marital status. (*Id.* at 733a-35a.) The Department appealed the trial court's decision to this Court.[13]

On appeal,[14] the Department argues that the trial court committed an error of law by dismissing the Department's Amended Complaint, thereby effectively striking off the confessed judgment in favor of the Department, because: (1) John Buhler's Estate is not an indispensable party and need not be joined to the action; and (2) the Department did not violate the ECOA in requiring Margaret Buhler to execute the Guaranty.

The Department first argues that the trial court committed an error of law by concluding that John Buhler's Estate was an indispensable party because: (1) warrants of attorney for confession of judgment may not be enforced

---

[13] The Department initially filed its appeal with the Pennsylvania Superior Court. Realizing, however, that it should have filed the appeal with this Court, the Department filed a motion to transfer the appeal. The Superior Court granted the Department's motion and transferred the matter to this Court for disposition.

[14] "The scope of this Court's review of a grant or denial of summary judgment is limited to determining whether the trial court committed an error of law or an abuse of discretion." *Kaplan v. Se. Pa. Transp. Auth.*, 688 A.2d 736, 738 n.2 (Pa. Cmwlth. 1997). "Summary judgment is appropriate only when, after examining the record in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Guy M. Cooper, Inc. v. E. Penn Sch. Dist.*, 903 A.2d 608, 613 (Pa. Cmwlth. 2006), *appeal denied*, 918 A.2d 748 (Pa. 2007).

against a party or his estate upon the party's death; and (2) the Guaranty imposed joint and several liability on John and Margaret Buhler, and, therefore, the Department may confess judgment against Margaret Buhler alone. In response, Appellees contend that the trial court properly concluded that John Buhler's Estate was an indispensable party because the Guaranty imposes joint liability on John and Margaret Buhler, not joint and several liability, and, in these instances, Pennsylvania courts have not permitted creditors to enter judgment against the surviving joint obligor alone.

An indispensable party is one whose "rights are so connected with the claims of the litigants that no decree can be made without impairing those rights." *Pilchesky v. Doherty*, 941 A.2d 95, 101 (Pa. Cmwlth. 2008). Where an indispensable party is not joined to a matter a jurisdictional defect is created and dismissal is appropriate. *Id.*; *see also Powell v. Shepard*, 113 A.2d 261, 264 (Pa. 1955). These basic principles are reflected in Pennsylvania Rule of Civil Procedure 2227(a), which provides that "[p]ersons having only a joint interest in the subject matter of an action must be joined on the same side as plaintiffs or defendants."

Joint interests and liabilities may be created by contract or covenant. *Yadusky v. Shugars*, 151 A. 785, 786 (Pa. 1930). It is presumed that, when two or more persons enter into a covenant or undertake an obligation, the parties have agreed to be jointly—and not severally—bound to the terms of the contract. *Mintz v. Tri-County Nat. Gas Co.*, 103 A. 285, 286 (Pa. 1918). This presumption will not hold, however, where the intention of the parties—evident in the language of the contract—reveals otherwise. *Id.* Warrants or powers of attorney to confess judgment must be construed in accordance with general principles of contract law. *Landow v. Bailinger*, 169 A. 780, 781 (Pa. 1934). Further, such a warrant must be

8

"strictly construed against the party in whose favor it is given." *Id.* When an obligor subject to a warrant of attorney for confession of judgment dies, "judgment [cannot] legally be entered against [obligor], or [his] estate, . . . by virtue of the confession." *First Fed. Sav. & Loan Ass'n of Greene Cty. v. Porter*, 183 A.2d 318, 322 (Pa. 1962) (*Porter*). The state of the law concerning whether judgment may be confessed against surviving obligors following the death of another obligor, however, seems to follow two paths, both of which appear to stem from our Supreme Court's decision in *Croasdell v. Tallant*, 83 Pa. 193 (1876).

In *Croasdell*, three obligors executed a promissory note to repay a sum of money to a third party. The promissory note also contained a warrant of attorney for confession of judgment, which referred to all obligors as a single unit. One of the obligors died, and the third party entered judgment against the surviving obligors. The surviving obligors sought to have the judgment against them stricken off, contending that the power to confess judgment only operated as to all obligors and could not be enforced against just two of the three obligors. The surviving obligors also argued that the Supreme Court should adhere to the English common law case *Gee v. Lane* (1812) 104 Eng. Rep. 967 (K.B.); 15 East 592, which held that "[a]n action to be brought against *us*, must mean a *joint* action[. . . . A]n authority by two, to enter judgment[ . . . . ]against *us*, will not warrant a judgment against one alone." *Croasdell*, 83 Pa. at 194 (emphasis in original) (quoting *Gee*, 104 Eng. Rep. at 967, 15 East 593).

Our Supreme Court, however, declined to follow *Gee*, rationalizing that Pennsylvania's statutory law concerning confessions of judgment has largely departed from English common law and has expanded creditors' rights with respect to confessions of judgment. *Id*. at 195. Consequently, the Supreme Court held that

9

"we must treat this case as one to be governed by the intent of the warrant." *Id*. at 195-96. The Supreme Court, therefore, concluded that the intent of the warrant of attorney was to impose joint and several liability on the surviving obligors. *Id*. at 195. The Supreme Court reasoned that, regardless of the fact that the warrant of attorney by itself contained language referring to obligors jointly, the warrant of attorney was "part of [the obligation] and a mere continuation of the instrument before the signatures[,]" and, as such, "[i]t would scarcely be a departure from its true intent to construe the warrant to be several as well as joint." *Id*.

After its decision in *Croasdell*, our Supreme Court resolved a similar issue—*i.e.*, whether surviving obligors may be reached by a warrant of attorney for confession of judgment—in *Ehnes v. Kissinger*, 72 A.2d 65 (Pa. 1950). In *Ehnes*, an individual borrowed money to purchase real property and issued a bond in consideration of the purchase. The bond contained a warrant of attorney for confession of judgment. Both the individual and her husband signed the bond as an obligor. Following the death of the individual's husband, the creditor entered judgment against only the individual pursuant to the warrant of attorney. The individual filed a petition to strike, arguing that the obligation in the bond was joint and that the warrant of attorney only authorized entry of judgment against both obligors, as husband and wife. The Supreme Court ultimately concluded that the creditor could enter judgment against the individual alone. *Ehnes*, 72 A.2d at 65. In reaching this conclusion, the Supreme Court quoted *Kingston National Bank v. Walters*, 63 A.2d 380 (Pa. Super. 1949), a Pennsylvania Superior Court case that interpreted the *Croasdell* decision to pronounce the following rule:

> "[T]reating the warrant or authority as joint, without regard to the nature of the obligation, judgment could be confessed and entered against the survivor alone, and this because various statutes in Pennsylvania greatly enlarged

10

> the rights of judgment creditors beyond those prevailing under the English law as announced in *Gee v. Lane . . . . Although it is proper to strike off a judgment entered by confession or on a warrant of attorney after the death of the debtor, the legal liability of the present survivor remains, and an insuperable obstacle to its fulfillment will not be interposed.*"

*Id*. (emphasis added) (quoting *Kingston Nat'l Bank*, 63 A.2d at 382-83). Applying this rule—*i.e.*, that judgment could be confessed against a surviving obligor regardless of the nature of the obligation—the Supreme Court held that the petition to strike off judgment against the individual must be dismissed. *Id*. The Supreme Court also stated, however, that pursuant to *Croasdell* "we must treat this case as one to be governed by the intent of the warrant, rather than by English decisions." *Id*. at 66 (quoting *Croasdell*, 83 Pa. at 195-96). Accordingly, the Supreme Court determined that the intent of the warrant of attorney was to impose joint and several liability because the sole purchaser of the property was the individual. *Id*. The Supreme Court further opined that "[t]o absolve such purchaser from her liability or to strike down the authority given by her to confess judgment against her . . . merely because her husband joined in executing the document, would be less than just." *Id*.

Based on *Croasdell* and *Ehnes*, it appears that our Supreme Court has applied two separate rules to determine whether judgment may be confessed against a surviving obligor: (1) regardless of the nature of the liability imposed by the underlying agreement, whether it may be joint or joint and several liability, creditors may confess judgment on surviving obligors alone; and (2) creditors may confess judgment on surviving obligors alone where the intent of the warrant of attorney is to impose liability on each of the obligors. It seems, however, that Pennsylvania courts have chosen to follow the first proposition and have permitted creditors to confess judgment against surviving obligors regardless of the type of obligation the

11

underlying credit instrument imposes. In fact, *Ehnes* and *Croasdell* appear to be the only appellate cases that have applied the second proposition and have considered the intent of the warrant of attorney when determining whether judgment could be confessed against a surviving obligor. This is evident in several cases from our Supreme Court and Superior Court. *See, e.g., Porter*, 183 A.2d at 323 ("A judgment could not legally be entered against [an obligor], or her estate, after her death by virtue of the confession in the bond and warrant. Her demise automatically terminated the warrant of attorney to confess judgment[.] To the contrary, a judgment could properly be entered against the survivor of the two obligors." (citations omitted)); *Woodward v. Carson*, 57 A. 342, 343 (Pa. 1904) ("In the present case the note was made by the appellant and his father, and at the time of the entry of the judgment the father was dead, but notwithstanding his death the appellee had full warrant for entering his judgment."); *First Nat'l Bank of Fryburg v. Kriebel*, 457 A.2d 961, 964 (Pa. Super. 1983) ("The death of a maker to an instrument terminates the warrant of attorney to confess judgment[, h]owever, a judgment may be entered against the survivor of a number of obligors." (citations omitted)).

In this case, both parties' arguments, at least in part, seem to rely on the proposition that whether the warrant of attorney for confession of judgment may be enforced against Margaret Buhler as a surviving obligor depends on whether the Guaranty imposed joint and several liability or joint liability on John and Margaret Buhler. As discussed above, however, our courts seem to permit creditors to confess judgment against surviving obligors regardless of the type of liability imposed by the underlying contract. Consequently, it matters not whether the Guaranty imposed joint and several liability or joint liability on Margaret and John Buhler. The Department was permitted to confess judgment against Margaret Buhler as the

surviving obligor. It follows that John Buhler's Estate is not, therefore, an indispensable party. Accordingly, we reverse the trial court's order to the extent that it dismissed the Department's Amended Complaint and effectively struck the confessed judgment in favor of the Department for failure to properly join John Buhler's Estate as an indispensable party.

Next, the Department argues that the trial court committed an error of law in concluding that the Department violated the ECOA by requiring Margaret Buhler to execute the Guaranty based solely on her marital status. Specifically, the Department argues that the trial court erroneously concluded that there were no facts of record to support the Department's assertions that Margaret Buhler was a *de facto* joint applicant or that John Buhler was not independently creditworthy. In response, Appellees contend that the trial court properly concluded that the Guaranty was unenforceable against Margaret Buhler because the Department discriminated against Margaret Buhler by requiring her signature on the Guaranty based solely on her marital status in violation of the ECOA.

Section 1691(a)(1) of the ECOA provides: "It shall be unlawful for any creditor to discriminate against any *applicant*, with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or *marital status*, or age . . . ." (Emphasis added.) Section 202.7(d)(1) of Regulation B, 12 C.F.R. § 202.7(d)(1)[15] provides, in relevant part:

> [A] creditor shall not require the signature of an applicant's spouse or other person, other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested. A creditor shall not deem the submission of a joint financial

---

[15] Regulation B sets forth the implementing regulations for the ECOA.

13

> statement or other evidence of jointly held assets as an application for joint credit.

Thus, pursuant to Section 1691(a)(1) of the ECOA and Section 202.7(d)(1) of Regulation B, creditors may not require a spouse to sign a credit instrument unless: (1) the spouse and the applicant are joint applicants; or (2) the creditor has determined that the applicant is not creditworthy. An applicant, for the purposes of the ECOA, is defined as "any person who requests or who has received an extension of credit from a creditor, and includes any person who is or may become contractually liable regarding an extension of credit." 12 C.F.R. § 202.2(e). Guarantors are included within the definition of "applicant" in this context—*i.e.*, when a spousal signature is included. *Id.* ("For purposes of § 202.7(d), the term includes guarantors, sureties, endorsers, and similar parties.").

Assuming, *arguendo*, that Section 1691(a)(1) of the ECOA (specifically, the spousal discrimination defense) is applicable to the factual situation presented in this case, factual issues remain in dispute.[16] The trial court determined

---

[16] We question whether the spousal discrimination defense applies to the factual scenario presented in this case—*i.e.*, when a spouse has been asked to sign a guaranty securing the debt, not of his or her husband or wife, but of a business entity. The relevant federal cases we have reviewed that discuss the spousal discrimination defense involve situations where an individual applies for a loan and the creditor requires the individual's spouse to guarantee the loan or where a husband and wife apply for a loan as a joint applicant. *See, e.g.*, *Midlantic Nat'l Bank v. Hansen*, 48 F.3d 693 (3d Cir.), *cert. dismissed*, 515 U.S. 1184 (1995) (involving situation in which husband and wife applied for loans as joint applicants); *In re Farris*, 194 B.R. 931 (Bankr. E.D. Pa. 1996) (involving situation in which husband was sole applicant for loan and creditor required wife to guarantee loan). We have not located any relevant federal cases that address the applicability of the spousal discrimination defense in the context of a husband and wife guaranteeing the debt of a business entity. We note, however, that in *Bank of America National Trust and Savings Association v. Hotel Rittenhouse Associates*, 595 F. Supp. 800 (E.D. Pa. 1984), a case decided under a prior version of Regulation B that specifically excluded guarantors from the definition of "applicant," a federal district court considered a factual situation in which a business entity applied for and received a line of credit and a husband and wife guaranteed the loan. *Bank of America Nat'l Trust and Savs. Ass'n*, 595 F. Supp. at 808. Given that guarantors are now included within

14

that the evidence of record demonstrated that the Department required Margaret Buhler to sign the Guaranty solely due to her marital status. Our review of the record, however, reveals that: (1) Margaret and John Buhler jointly owned 50.1% of the shares of AES; and (2) John and Margaret Buhler may have jointly owned several properties, mineral rights, and investments. (R.R. at 270a, 294a-98a.) Further, the record does not appear to contain any evidence regarding John Buhler's creditworthiness. As a result, material questions of fact remain concerning whether the Department required Margaret Buhler to sign the Guaranty based solely on her marital status, whether John Buhler was independently creditworthy, and, ultimately, whether the Department violated the ECOA. We, therefore, reverse the trial court's order to the extent that it dismissed the Department's Amended Complaint and struck the confessed judgment in favor of the Department on the basis that the Department violated the ECOA.

Accordingly, we reverse the trial court's order.

P. KEVIN BROBSON, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

---

the definition of "applicant" for the purposes of the spousal discrimination defense, this case is no longer relevant. In addition, while we have not discovered any relevant federal case addressing the factual situation before us, the Pennsylvania Superior Court addressed a similar factual situation in *Southwestern Pennsylvania Regional Council, Inc. v. Gentile*, 776 A.2d 276 (Pa. Super. 2001) (concluding that spousal discrimination defense was inapplicable where husband and wife presented themselves as joint applicants on personal financial statement submitted with loan application).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania    :
by the Department of Community   :
and Economic Development,     :
                   Appellant   :
                             :
               v.           :   No. 1322 C.D. 2018
                             :
Michael Jay Buhler and Jefferey   :
Otto Buhler, Executors of the Estate  :
of Margaret A. Buhler, Deceased and  :
Jefferey Buhler and Michael Buhler,  :
Executors of the Estate of      :
John Buhler, Deceased        :

# **O R D E R**

AND NOW, this 10th day of July, 2019, the order of the Court of Common Pleas for the 59th Judicial District, Elk County Branch (trial court) is hereby REVERSED.

 

 

                              _____
                              P. KEVIN BROBSON, Judge